H. L. SUTTON, Respondent, *v.* A. CASSELLEGGI ET AL., Appellants.

### January 15, 1878.

1. Where a married woman attempts, by deed, to convey her undivided half-interest in certain real estate to a trustee, to hold for her during her life, with remainder to her children, which conveyance is void by reason of a defective acknowledgment, and, after her husband's death, enters into a marriage contract, in which she, without mentioning the void deed, states that she has a life-estate in the premises, and conveys the same to a trustee for her use, these recitals do not validate the former deed, and create no estoppel.

2. Declarations by a party in possession are admissible to show the nature of his possession, or under what title he claims to hold, but such declarations cannot be made to prove the title itself.

3. A tenant's possession, while the term continues, is never adverse to the title of the lessor, unless made so by some act of disseisin to which the lessor assents. A disclaimer against the landlord, or admission of title in a third person, by the tenant, of which the landlord has no notice, will not make the tenant's possession adverse so as to affect the landlord's rights.

4. There is no distinction between a change of possession resulting from a judgment against the tenant alone, which denies the validity of his lease, which judgment was afterwards reversed, and a voluntary transfer of possession to a stranger by the tenant, in so far as they affect the question of adverse possession against a grantee of the lessor. The lease being valid, the lessor's devisee could not maintain ejectment until after the expiration of the term, and the Statute of Limitations does not begin to run against him until then. -

APPEAL from St. Louis Circuit Court.

*Affirmed.*

CLINE, JAMISON & DAY, for appellants: The effect of a deed to husband and wife depends, not on the terms of the deed, but upon the fact that the grantees are in fact husband and wife, and that the conveyance is made to them jointly; for if made to them as tenants in common, they take as such. — *Gibson* v. *Zimmermann*, 12 Mo. 385; *Jackson* v. *Stevens*, 16 Johns. 110; *Doe* v. *Parrott*, 5 Term Rep. 652. The recitals in the marriage contract of December, 1828, necessarily referred to and ratified the deed of November, 1820. — *Price* v. *Hart*, 29 Mo. 171; *Boatman* v. *Curry*, 25 Mo. 433; *Thomas* v. *Pullis*, 56 Mo. 219; *Hall* v. *Betty*, 4 Man. & G. 410. Estoppel. — *Clamorgan* v. *Green*, 32 Mo. 285; *Joeckel* v. *Easton*, 11 Mo. 118; *Dickson* v. *Anderson*, 9 Mo. 155; *Carver* v. *Jackson*, 4 Pet. 82; *Bensley* v. *Bowden*, 8 L. J., chap. 85. Adverse possession. — *Warfield* v. *Lindell*, 30 Mo. 273; *Hamilton* v. *Boggess*, 63 Mo. 249. Rosalie's possession must be construed in reference to the deeds and marriage contract, under which she took and held possession. — *Musick* v. *Barney*, 49 Mo. 463; *Hamilton* v. *Boggess*, 63 Mo. 233; *Clark* v. *Insurance Co.*, 52 Mo. 272; *Cadman* v. *Winslow*, 10 Mass., side p. 151; *The Commonwealth* v. *Dudley*, 10 Mass., side p. 408. The declarations of a person in possession of lands are compe-

tent evidence against himself, and all persons claiming under him, for the purpose of showing the character of his possession and by what title he claims. — *Pitts* v. *Wilder*, 1 N. Y. 525 ; *Abeel* v. *Van Geldor*, 36 N. Y. 513 ; *Jackson* v. *Bard*, 4 Johns. 230 ; *Rogers* v. *Moore*, 10 Conn. 13.

BRITTON A. HILL, for respondent : A deed made by a married woman without joining her husband is void. — Perk., sec. 154 ; Co. Lit. 42 *b*, Hargr., note 4 ; 3 Burr. 1805 ; 2 Bla. Com. 293 ; 2 Washb. on Real Prop. 558, sec. 14 ; 2 Kent's Comm. 152 ; Rev. Stat. 1855, chap. 32, sec. 35. Defective acknowledgment of deed of married woman. — Rev. Stat. 1855, chap. 32, sec. 35 ; *Little* v. *McDowell*, 33 Mo. 523 ; Sess. Acts 1825, p. 220, sec. 12. Where the lease is valid, the lessor's grantee cannot enter until after the expiration of the lease, and the Statute of Limitations does not begin to run until the expiration of the term. — *Doe* v. *Danvers*, 7 East, 299.

LEWIS, P. J., delivered the opinion of the court.

This is a suit in ejectment for an undivided one-third part of a lot fronting thirty-two and a half feet on Third Street, in the city of St. Louis. The Circuit Court, sitting as a jury, found the plaintiff entitled to one undivided eighth part of the lot, and rendered judgment accordingly. Both parties appealed.

Rosalie Vermet was married in Canada, about the year 1800, to Jean Baptiste Robidoux. By him she had a daughter, Archange, born in 1803, who subsequently married Robert A. McDowell, and Laurent, a son, born in 1805. In 1818, Rosalie had fled from her husband in Canada, and was living in St. Louis with Lange Allard, as his wife. On June 8, of that year, Joseph Montaigne conveyed the lot in controversy to Allard and Rosalie, describing them as husband and wife. In 1820, J. B. Robidoux came to St. Louis, and renewed his marital relations with Rosalie Vermet. On Nov. 16, 1820, a deed was executed by Robidoux and

Rosalie, his wife, conveying the property to Horatio Cozens, as trustee, for the sole use of said Rosalie during her natural life, and after her death one undivided half for the use of Laurent Robidoux and the heirs of his body, and the other undivided half for the use of Archange Robidoux and the heirs of her body; and in case of the death of Laurent Robidoux without issue, his undivided half should be held by said trustee for the use of Archange and the heirs of her body; and in case of the death of Archange without issue, then her undivided half to be held in trust for the use of Laurent; and in case both Laurent and Archange should die without issue, then in trust for the use of the legal representatives of Archange. This deed was inoperative, by reason of defective acknowledgment.

On June 9, 1821, Lange Allard executed a conveyance of the lot to Horatio Cozens, as trustee, for the sole use and benefit Rosalie Robidoux, wife of J. Baptiste Robidoux, for and during her natural life, with remainder to himself ( Lange Allard ) during his life, with remainder after his death to said Laurent Robidoux and Archange Robidoux, as tenants in common.

Lange Allard, about this time, left for the Rocky Mountains, and was never afterwards heard from. He is supposed to have died within a few years.

It was agreed and admitted on the trial, that, —

" J. B. Robidoux lived with his wife, Rosalie, in the city of St. Louis, from 1819 up to the time of his death, in 1826. His widow, Rosalie, thereupon married Paul Morris, who died in 1832; and after the death of Morris, the widow married Victor Chataigne in 1836, and they lived together as husband and wife until 1853, when he died, leaving said Rosalie, his widow, surviving him. Rosalie died the 18th of October, 1858, leaving her last will, that was probated on the 21st of October, 1858. Archange, her daughter, had married one McDowell, and had as issue of said marriage five children,— Robert A., John B., Emily, Rosalie, and

Mary McDowell. Mary McDowell died in 1863, intestate and without issue. All of the surviving children of McDowell were of the age of twenty-one years in 1861, December 5. Emily married Joseph W. Renfrow in 1863, and Rosalie married James A. Maclay in 1864. Archange McDowell died in 1871, intestate, and her husband died in 1864, intestate.

" Laurent Robidoux is still alive, and has eight children, who are all alive. The net rents over and above taxes were $1,137 a year prior to 1873, and $937 since the 1st January, 1873. Mary McDowell was eighteen years and eight months old on the sixth day of December, 1861.

" The defendant Pauline Dalton has all the right, title, and interest in and to said premises sued for, which was vested in her husband, John Dalton."

On November 15, 1828, a marriage contract was entered into between Paul Morris and Rosalie Robidoux, parties of the first and second parts, and Francis X. Belcour, party of the third part, which recites that Rosalie is seized of a life-estate in the premises, and conveys this to the party of the third part, for the sole use, etc., of Rosalie. On Dec. 5, 1828, the same three parties joined in a conveyance of the lot to Laurent Robidoux, who, on Jan. 29, 1829, conveyed it to Mary Philip Leduc, as trustee, for the sole use and benefit of Rosalie Morris, during her natural life. The deed of Dec. 5, 1828, from Morris and wife and her trustee, was acknowledged before a justice of the County Court, a mode not authorized by the statute of 1825, then in force, so far as it might affect the estate of a married woman. Rev. Stat. 1825, p. 218, sec. 8 ; p. 220, sec. 12. On May 1, 1850, the premises were leased, in writing, by Victor Chataigne and Rosalie, his wife, to Jesse Little, for a term of fifteen years. By the last will of Rosalie Chataigne, she devised one-third of the lot in controversy to her son, Laurent Robidoux, one-third to his children, and one-third to the children of Archange McDowell. After

the death of Madame Chataigne, a suit was instituted in
the St. Louis Land Court, at the March term, 1859, by
McDowell and wife and Laurent Robidoux against Jesse
Little, the plaintiffs alleging their entry and avoidance of
the lease granted by Rosalie Chataigne, who had only a
life-estate in the premises, and demanding judgment for
possession. They recovered judgment, under which pos-
session was delivered to them in April, 1861. On March
2, 1861, Laurent Robidoux and wife conveyed the premises
to Stephen D. Barlow, as trustee, to secure the payment of
a promissory note in favor of D. B. Hunt. On the same
day, a deed of trust was executed by Archange McDowell,
who described herself as a single woman, conveying the
premises to Stephen D. Barlow, trustee, to secure the pay-
ment of a promissory note in favor of Laurent Robidoux.
Under these two trust-deeds, the property was sold by the
trustee on Jan. 29, 1862, and duly conveyed to John
Dalton. From the transfer of possession to Archange
and Laurent, in April, 1861, they received the rents
accruing, until Dalton's purchase under the trust-deeds.
Dalton collected them from that time until his death; after
which event, the rents were collected by his legal repre-
sentatives, including the defendant Pauline Dalton, up to
the commencement of this suit. The other defendants are
tenants under Pauline Dalton. In 1863, the judgment
obtained by Archange and Laurent against Jesse Little
was reversed by the Supreme Court, on account of the
defective acknowledgment of the deed of Nov. 16, 1820,
from J. B. Robidoux and wife to Cozens, trustee. *Mc-
Dowell* v. *Little*, 33 Mo. 523. This decision, in effect,
denied that Rosalie Chataigne was seized of only a life-
estate in the lot, and validated her lease to Little for the full
term, or until March 1, 1865. In March, 1864, Little's
heirs sued Dalton for recovery of the possession, and dam-
ages. This cause was tried in March, 1866, when the
plaintiffs obtained judgment for full damages, but not for

possession, since the lease had then expired. Rosalie Robidoux Morris Chataigne had exclusive and undisturbed possession of the premises, by herself or lessee, from 1818 until her death, in 1858. The plaintiff in this case exhibited conveyances to himself from three of the four surviving children of Archange McDowell.

The plaintiff asked for five lengthy instructions, all of which were refused. The defendants asked for seven, of which two only were given. The purport of all will be understood most easily from a statement of the several theories urged by the parties, respectively.

. On behalf of the defendants, it is claimed : —

1. That Lange Allard and Rosalie Robidoux acquired the whole title, in 1818, as tenants in common; that, by virtue of the deed from Allard to Cozens, of June 9, 1821, the Allard half, upon the death of Rosalie, became vested in Archange McDowell and Laurent Robidoux, who, through their trust-deeds, in 1861, transferred their title to John Dalton, whose rights are now vested in defendant Pauline Dalton. Plaintiff, therefore, can recover nothing as to that half.

2. That, by the recitals in the marriage contract of Nov. 15, 1828, and in the deed of Morris, wife, and Balcour, of Dec. 5, 1828, showing only a life-estate in Rosalie, the defectively acknowledged deed of J. B. Robidoux and wife to Cozens, of Nov. 16, 1820, was ratified and validated, so that thenceforth Rosalie's title was, in fact, of a life-estate only, the remainder in fee being vested in Archange McDowell and Laurent Robidoux to the extent of both halves ; and their rights having been acquired by the defendant Pauline Dalton, plaintiff can recover nothing.

3. That the possession acquired by Archange and Laurent under their judgment against Little, the lessee, in April, 1861, was in open derogation of any claim of more than a life-estate in Rosalie Chataigne, and was, therefore, adverse to any title referable to her last will ; that, although that

judgment was afterwards reversed, the possession in fact continued without interruption until the commencement of this suit, on Nov. 2, 1873; that the children of Archange McDowell, plaintiff's grantors, having all attained the age of twenty-one years in December, 1861, the Statute of Limitations then began to run against their devise from Rosalie, so that this claim was effectually barred. No other title having ever reached the plaintiff's grantors, he could not recover.

The first position thus taken for defendants is, in the main, correct. The deed of Joseph Montaigne, in 1818, created in his grantees, Allard and Rosalie, a tenancy in common. The deed from Allard, of June 9, 1821, operated to vest his undivided half, upon the death of Rosalie, in Archange McDowell and Laurent Robidoux. No interest in this half could reach the plaintiff's grantors, unless by inheritance from Archange, their mother. But while it may be true, as asserted by plaintiff, that her trust-deed of 1861 was, by reason of defective execution, inoperative as a direct conveyance, yet, for reasons which will hereafter appear, there was no devolution of the title of Archange by descent to her children. Plaintiff, therefore, has shown no right in the one-half which was originally held by Lange Allard.

If the marriage contract of 1828 ratifies and validates a former defective or insufficient conveyance, it must be because the later instrument, being properly executed, adopts the earlier, in effect, as a part of itself; vitalizing and perfecting the inoperative and imperfect, by imparting its own elements of legal sufficiency. To do this, apt words of description should be used, distinctly identifying the instrument so to be validated and reaffirmed. But in the marriage contract no mention whatever is made of the deed of J. B. Robidoux to Cozens, which, the defendants say, was thereby made effectual, although declared void by the Supreme Court. The only imaginable connection between the two, lies in the circumstance that the one

recites an interest derived from some unknown source, which the other might have bestowed, but did not. This is too remote. The authorities cited by defendants give it no countenance whatever.

There is no estoppel in the recitals. A recital, to operate an estoppel, must be such as it would be competent to prove as an admission by the party charged, to establish a fact in dispute. Title in a grantor cannot be proved by mere declaration or admission. *Joeckel* v. *Easton*, 11 Mo. 118. No new right or obligation was · created in any one with whom defendants are in privity, in consequence of the recitals, whether these were true or false. Declarations by a party in possession are admissible to show the nature of his possession, or under what title he claims to hold. But it would be a novel application of this rule to make such declarations prove the title itself. These remarks would equally apply to the recitals in the deed of Paul Morris, wife, and Balcour, to Laurent Robidoux, if that were a proper conveyance. But it was void, under the statute of 1825, for reasons already stated.

Against the third position assumed by defendants, the plaintiff objects that no limitation could run against a title derived from Rosalie Chataigne, so long as the lease granted by her was undetermined. A tenant's possession, while the term continues, is never adverse to the title of the lessor, unless made so by some act of disseisin to which the lessor assents. If a stranger gets into possession during the same period, the presumption will be that he has acquired it from the tenant; and so its character remains unchanged. But it is argued for defendants that these principles rest wholly on the assumption of a permissive occupancy, derived directly or indirectly from the owner or lessor; that the character of the occupancy in this case, under the judgment against Little, being in its very nature the reverse of permissive, and in utter denial of any permissive power in Rosalie Chataigne or her devisees, such

principles cannot be here applied. It is further contended that an adverse possession, available under the Statute of Limitations, is never supposed to be held by a rightful title ; that the essential adjuncts being a mere claim or color of title and actual occupancy, it is, therefore, immaterial to consider whether the judgment obtained by Archange and Laurent was wrongful or was eventually reversed ; that, while it stood, it was ample to support a claim or color of title, and thus to uphold an adverse possession within the operation of the statute ; that it was, in fact, a solemn judicial denial of any estate in Rosalie Chataigne which she was capable of transmitting by will, and thus a possession obtained by its means was openly hostile to the lease ; avowing its existence to be by virtue, not of the lease, but of its absolute nullity ; that this adverse possession, having continued without interruption from April, 1861, until the commencement of this suit, in November, 1873, the statutory bar of ten years is complete against the devise to plaintiff's grantors, all of whom had attained the age of twenty-one years in December, 1861.

Against this argument and its conclusion, two prominent facts are arrayed : First, the plaintiff's grantors were not parties to the suit of Archange and Laurent against Little, or in any manner bound by the judgment rendered ; second, howsoever the possession was obtained from their devisor's lessee, the plaintiff's grantors could not sue to recover it until the expiration of the lease, in 1865. The outstanding lease would have been a complete defence in the hands of the occupants, whoever they might be, against any possessory action instituted on behalf of the lessor's devisees. These considerations suffice to illustrate the manifest injustice of holding the devisees accountable for laches in not suing within ten years after April, 1861 ; but their exemption from such accountability stands, also, upon long-established legal principles.

We are not referred to any case in which the facts were

precisely similar to those here before us, and have, there-
fore, no authoritative light thrown upon the distinction, if
any there be, between a voluntary transfer of possession by
the lessee to a stranger, and a change of possession result-
ing from a judgment against the tenant which denies the
validity of his lease.   We mean this with reference only to
the effect of such a distinction upon the question of adverse
possession against a grantee of the lessor.   We can dis-
cover, on principle, no reason why any such distinction
should exist.   The ancient rule is, that, if a tenant for years
convey the land in fee to a stranger, the landlord may, for
the sake of the remedy, elect to treat this as a disseisin.
But the tenant cannot thus make himself a disseisor in spite
of his landlord.   *Taylor* v. *Horde*, 1 Burr. 112 ; *Jackson* v.
*Davis*, 5 Cow. 123.   Nor can a tenant, by any disclaimer
against his landlord, or admission of title in a third person,
without his knowledge and acquiescence, affect the title of
his landlord.   *Hovenden* v. *Annesly*, 2 Sch. & Lef. 607.
Can there be any practical difference, in effect, between an
attempted transfer by paper conveyance and one by suit
and judgment, when, in either case, the landlord is a
stranger to the proceeding?   We think not.

In *Shepley* v. *Lytle*, 6 Watts, 500, the testator had made a
lease which did not expire until five years after his death.
Two years before the end of the term, the defendant lessee,
claiming to hold a conveyance of the plaintiff's interest as
devisee, made a partition with the other devisee, of all the
land, to the exclusion of the plaintiff.   Suit was commenced
more than twenty years after the partition, but within
twenty years from the expiration of the lease.   It was held
that the adverse possession should date from the expiration
of the lease, and that there was no bar.   Said the court :
"Although the partition made of the estate between Abra-
ham and one of the other devisees thereof, in 1814, was
altogether repugnant and incompatible with Williams's right
in it, yet it does not appear that he had any knowledge of

it whatever; and the disclaimer of the tenant cannot affect the right of the lessor or his assignee, so as to render the possession of the former adverse to the right of the latter, until he has notice of it and acquiesces in it.''

Upon the death of Rosalie Chataigne, her devisees became seized in law, through her lessee, of whatever reversionary interest the will was competent to convey. Their seisin could not be divested by acts of the tenant, to which they were not parties nor acquiescent, until May 1, 1865. They were, therefore, as required by the terms of the statute, seized of this interest within ten years before the commencement of this suit.

The plaintiff claims that Rosalie Chataigne's possession of the premises from 1818 to 1858, with the lease superadded, vested in her an absolute title to the whole lot, against all the world. This has no foundation. Rosalie was tenant in common with Lange Allard and his grantees, in remainder or otherwise, and no act of ouster against her co-tenants appears in the record. After Allard's death, she held his half as tenant for life, and not adversely to the remainder-men. Exclusive possession never added any thing to her documentary rights.

It is further claimed for the plaintiff that his grantors, as children of Archange McDowell, inherited an interest to which he is entitled. A comparison of dates shows that when Archange executed, as a *feme sole*, the trust-deed, in 1861, her husband was still living. The deed was, therefore, insufficient. But under this defective instrument, as a colorable title, John Dalton acquired possession, claiming the fee, in 1862. This possession continued in him and his representatives for more than ten years before suit commenced, and so barred the heritable claim of plaintiff's grantors, as applied to any interest formerly held by their mother.

It thus appears that the only title which has reached the plaintiff is that acquired by his immediate grantors under

the last will of Rosalie Chataigne.    The testatrix owned one-half the lot, in fee.    She devised one-third of this half to the children of Archange McDowell, of whom there were four surviving.    Plaintiff acquired the interests of three of these children.    Three-fourths of one-third of one-half are equivalent to one-eighth of the whole, which was the amount of the plaintiff's recovery in the Circuit Court. The judgment is affirmed.    All the judges concur.