Sutton v. Casseleggi.

## SUTTON, *Appellant*, v. CASSELEGGI.

1. **Married Woman's Deed.** A deed executed by a married woman without her husband, is void.

2. **Landlord and Tenant**: REMAINDERS. A lease for years by one who is tenant in fee as to one undivided half and tenant for life as to the other undivided half of the premises, is valid as against the remainderman entitled to the latter half during the life of the lessor.

3. **Adverse Possession**: REMAINDERS. The possession of a life tenant cannot be adverse to the remainderman.

4. ———. Though a deed be void, possession taken and held under it will be adverse as against the grantor and those claiming under him.

5. **Limitations**: COVERTURE. The statute of limitations does not run against a married woman during coverture, if she was under coverture when her cause of action accrued.

6. **Ejectment**: PARTIES: LANDLORD AND TENANT: DAMAGES. Tenants actually in possession, and not their landlord, are the necessary parties defendant to an action of ejectment. Under the statute, though, the landlord may, on his own motion, be joined as a defendant.

Where tenants occupy separate parcels of land under a common landlord, they should be sued separately. If, however, they are sued jointly and there is judgment against them, the error will be immaterial, if the judgment is for possession with nominal damages only; otherwise, if substantial damages are awarded.

In such case also there can be no recovery of substantial damages against a landlord joined as co-defendant with his tenants.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*Britton A. Hill* for appellant.

*Cline, Jamison & Day* for respondents.

MARTIN, C.—This was an action of ejectment, commenced on the 2nd day of November, 1873, to recover a parcel of ground on Third street in block 63 of the city of St. Louis, containing a front of thirty-two and a half feet on Third street, by a depth of fifty-four feet. The defendants filed separate answers, putting in issue the plaintiff's title, and denying all joint possession or occupancy, and setting up the defense of the statute of limitations. Pauline Dalton, in her answer, avers that she is the owner of the lot of ground; that she rented the south half to Casseleggi, and the north half to Dolan, her co-defendants, who were in possession as her tenants at the beginning of the suit, and are still in possession as such tenants. The replication puts in issue the new matter of the answers, and contains a denial of ownership in said Pauline to any interest exceeding one-third thereof. The case was tried by the court without the intervention of a jury, and resulted in a judgment for plaintiff for an undivided one-eighth of the lot sued for, and for $1 rents and profits, and $1 monthly value. Both parties appealed to the St. Louis court of appeals. The judgment was there affirmed in all things. See 5 Mo. App. 122. From this judgment of affirmance the plaintiff has appealed to this court, and the errors, if any, made against him, come before us for correction. The defendants have abided with the decision of affirmance, and have prosecuted no appeal.

An agreed statement of facts took the place of much

evidence, and as it has a controlling effect, as far as it goes, I will set it out.

Agreed statement of facts:

"It is admitted in the trial of the cause that Joseph Montaigne is the common source of title to the lot sued for, and owned the said lot in fee on the 8th day of June, 1818; that J. Baptiste Robidoux had disappeared for several years from his family and his home, and Rosalie Robidoux came from Canada to St. Louis with her daughter Archange, in the year 1817; that soon after Rosalie came to St. Louis, she being regarded as a widow, and her husband, Robidoux, as dead, one Lange Allard took her as his wife, and lived with her as such during the year 1818; and until J. Baptiste Robidoux appeared in St. Louis and claimed his rights as a husband, in the year 1819. Lange Allard left and went up to the mountains and died there within a few years. J. B. Robidoux lived with his wife Rosalie, in the city of St. Louis, from 1819 up to the time of his death in 1826. His widow, Rosalie, thereupon married Paul Morris, who died in 1832, and after the death of Morris the widow married Victor Chataigne in 1836, and they lived together as husband and wife until 1853, when he died, leaving said Rosalie, his widow, surviving him. Said Rosalie died the 18th day of October, 1858, leaving her last will, that was probated on the 21st day of October, 1858. Archange, her daughter, had married one McDowell, in 1836, and had issue of said marriage five children— Robert A., John B., Emily, Rosalie and Mary. Mary died in 1863, intestate and without issue. All of the surviving children of McDowell were of the age of twenty-one years in 1861, December 5th. Emily married Joseph W. Renfrow, in 1863, and Rosalie married James A. Maclay, in 1864. Archange McDowell died in 1871, intestate, and her husband died in 1864, intestate. Laurent Robidoux is still alive, and has eight children, who are all alive. The net rents, over and above taxes, were $1,137 a year, prior to 1873, and $937 a year since January 1st, 1873. The

said Mary McDowell was eighteen years and eight months old on the 6th day of December, 1861. The said Pauline Dalton has all the right, title and interest in and to said premises sued for which was vested in her husband, John Dalton."

Several conveyances were submitted by both sides, as well as oral evidence bearing upon adverse possession as vesting title under the statute of limitations in favor of plaintiff as well as defendants.

For the purpose of tracing down the record title from the common source admitted in the agreement, I will not notice deeds which have been justly held to be ineffectual to pass title by reason of defective acknowledgments or non-joinder of husbands. After ascertaining the record title transmitted to the claimants or their grantors, I will then consider to what extent the title so transmitted has been lost or divested by adverse possession.

Joseph Montaigne was the original owner of the premises. On the 8th day of June, 1818, he conveyed the lot to Lange Allard and Rosalie Allard, his wife. Rosalie Allard was not his wife, but was in truth Rosalie Robidoux, who had left her husband in Canada and was co-habiting with Allard as his wife. This deed gave the land to Lange Allard and Rosalie as tenants in common, Rosalie thereby becoming vested with one undivided half in fee, while the other half vested in Allard. In 1819, J. Baptiste Robidoux, her lawful husband, hunted up his wife Rosalie in St. Louis, claimed his marital rights, and lived with her till his death in 1826. Before the death of Robidoux, Lange Allard, who had given Rosalie back to him, conveyed, on the 8th day of June, 1818, the undivided one-half of the land to Horatio Cozzens as trustee for Rosalie for life, with remainders as to said half in fee to Laurent and Archange, son and daughter of Rosalie by Robidoux, her husband. At this date the title stood one-half in Rosalie in fee, the other half in her for life, with remainder in fee as to that half in Laurent and Archange, one-fourth in each undi-

vided. Thus stood the title at the death of Robidoux in 1826. It remained unchanged in November, 1828, at which date Rosalie married Paul Morris, which fact is evidenced by a marriage contract of that date. He died in 1832. In 1836 Rosalie married Victor Chataigne, her third and last husband, with whom she lived till his death in 1853. The title remained unchanged at the death of Rosalie, which took place in 1858. It appears in evidence that by herself or tenants she had occupied the lot up to the time of her death.

She left a last will by which, after certain other devises, she willed all the rest and residue of her estate, one-third to Laurent, one-third to the children of Laurent, and one-third to the children of Archange. These two persons were her son and daughter. This will carried to the devisees all that she died seized of, viz: one-half undivided. As to the other half undivided she had possessed only a life estate, which terminated at her death. Thus her decease left the title, one-fourth in Laurent and one-fourth in Archange, which came to them from the deed of Lange Allard, made in June, 1821. The other half of which Rosalie had died seized in fee by virtue of her will vested, as to one-third of one-half or one-sixth, in Laurent, one-sixth in the children of Laurent, and one-sixth in the children of Archange. The devolution of the record title is very clear. No one could claim any part of this title except by deed, devise or descent from Laurent or Archange or the children of Laurent or Archange.

According to the statement of facts, Archange married one McDowell in 1836, and had issue five children—Robt. A., John B., Emily, Rosalie and Mary. Mary died intestate in 1863, without issue, leaving her brothers and sisters to inherit her share. Emily married Renfrow in 1863, Rosalie married Maclay in 1864, Archange, the mother, died intestate in 1871. Laurent is living with eight children, all alive.

The plaintiff submitted three deeds from three of the

26—77

four heirs of Archange, Robert, Emily and Rosalie, Jr., all made on the 13th day of April, 1873. These four heirs, as we have seen, acquired one-fourth from the Allard deed, as heirs of Archange, and one-sixth from their grandmother's will. These three deeds from three of the four heirs gave to plaintiff three-fourths of the one-fourth coming from Allard, and three-fourths of the one-sixth coming by the grandmother's will, amounting to one-eighth, making in all fifteen-forty-eighths. There was no valid deed given in evidence taking any part of this title from the plaintiff or his grantors. The court of appeals held that as to the portion coming through the conveyance from Allard the title was lost by the statute of limitations, and allowed recovery only for the one-eighth coming by the will of Rosalie, their grandmother, and the plaintiff comes here by appeal, insisting that under the law and evidence he is entitled to have judgment for the three-fourths of the one-fourth denied to him by the circuit court and court of appeals, being nine-forty-eighths of the whole.

It is necessary for us to consider the facts relied upon by the defendant for defeating this portion of the plaintiff's title. But before doing this, I may as well call attention to the record title submitted in evidence by Pauline Dalton, the defendant. It consisted of a deed of trust by Laurent and wife to secure a debt of $4,000, dated March 2nd, 1861, and the deed of the trustee to John Dalton, dated January 29th, 1862. This placed in Dalton the one-fourth acquired by Laurent from the Allard deed, also the one-sixth acquired by the will of his mother, which would be five-twelfths or twenty-forty-eighths of the whole. By the agreement in the case, Pauline Dalton is possessed of all the title acquired by John Dalton, which, as we have seen, amounted to twenty-forty-eighths. There remained five-forty-eighths outstanding in John B., the son of Archange, and eight-forty-eighths in the children of Laurent, none of whom are parties to this suit.

The facts of adverse possession relied on by defendants

may be briefly recited. On the 16th day of November, 1820, Rosalie joined with her husband, Robidoux, in a conveyance of the whole lot to a trustee in trust for the separate use of herself for life with cross remainders in fee to Laurent and Archange, and their heirs. This deed was a nullity for want of a proper acknowledgment. *Little v. McDowell*, 33 Mo. 523. On the 5th day of December, 1829, Rosalie, joining with Paul Morris, her second husband, made a deed of the whole lot to a trustee to the use of Laurent. This was also a nullity for want of a proper acknowledgment in open court. On the 29th of the same month in 1829, Laurent and wife conveyed back the lot to a trustee to the sole use of Rosalie during life. This deed was also void for the same reason. These deeds left the estate in Rosalie unchanged. She continued to own one-half in fee, the other one-half for life, remainder to Laurent and Archange. She remained in possession of the property. But her children evidently considered her owning only a life estate by virtue of the void deeds.

In 1850, joining with Chataigne, her last husband, Rosalie executes a lease of the premises to Jesse Little for fifteen years from March 1st, 1850. Little entered into possession as her tenant. After the death of Rosalie, which took place in 1858, her two children, Laurent and Archange, claiming that the life estate upon which the lease rested was at an end, brought suit for possession against Little in the St. Louis land court, to the March term, 1859. On the 9th day of June, 1860, judgment was rendered for $1,500 damages, and $100 monthly rents. Laurent and Archange in this suit evidently regarded themselves as tenants in common as to the fee of the lot. Little died while the suit was going on, and his executor compromised the damages on the judgment, in 1861, which compromise left open the right of appeal. The appeal was duly proceeded with, and in the meantime the rents were collected from the tenants by John Maguire and paid over to Laurent and Archange. Matters remained in this

condition till John Dalton foreclosed the deed of trust made by Laurent in March, 1861, heretofore mentioned. This foreclosure took place January 29th, 1862. This foreclosure gave him Laurent's title, whatever it might be. He took Laurent's place, and commenced by virtue of it, to receive his share of the rents and profits from Maguire, the collector, on the 1st day of May, 1862.

At the same time that Laurent made a deed of trust, March 2nd, 1861, Archange also made one. This deed of trust made by Archange was closed out on the 26th day of May, 1862, and John Dalton became the purchaser. After the second purchase he received from Maguire all the rents and profits on the strength of the two deeds of foreclosure in Laurent and Archange. But the deed of Archange passed no title, because she was a married woman at the time, and her husband, McDowell, did not join in the deed. It may be remarked in passing that the circuit court evidently accepted this deed as valid, and thereby denied to the plaintiff the Allard title. The court of appeals held the deed invalid, but denied the Allard title by virtue of a disseisin under the statute of limitations. The two courts came to the same judgment, but in different ways. Nevertheless Dalton, under the belief that it was good, received all the rents and profits of the property after its foreclosure, May 26th, 1862.

1. MARRIED WOM-
AN'S DEED.

Thus matters remained until the appeal taken by Little's executors against Archange and Laurent in the eject ment suit was determined in favor of the lessee at the April term, 1863, of the Supreme Court, (33 Mo. 523). It was held on the appeal that the deed of November 16th, 1820, wherein Rosalie and her husband Robidoux, had undertaken to convey the land to a trustee to the use of Rosalie for life, with cross remainders in favor of Laurent and Archange, was void. This decision rendered the lease valid for fifteen years from May 1st, 1850, as being made by a person who had at least an undivided half of the lot in fee, besides a life estate in

2. LANDLORD AND
TENANT: remain-
ders.

the other half at the making of the lease. This decision was a very influential event in its effect upon the complicated and romantic title now in dispute. Immediately the heirs of Jesse Little, claiming under the lease, sued John Dalton in ejectment for the lot and for the rents and profits, on the 1st day of February, 1864. While this action was pending, John Dalton died, and his heirs and administratrix became parties to the suit. The term in the lease was established, but it had expired before judgment, and the Little heirs recovered a judgment for rents and profits only, which, in 1866, was paid by the Daltons.

The court of appeals properly held that the possession of Rosalie up to the time of her death in 1858, could not **3. ADVERSE POSSESSION: remainders.** be adverse to the one-half given in remainder to Laurent and Archange. Her possession as life tenant was their possession. After her death Laurent and Archange took her place as to that half, and as if owners in fee of the other half, received the whole rents and profits.

Now, there is no pretense of adverse possession in Dalton prior to the foreclosure of the deeds of trust in **4. ——.** January and May, 1862. By these deeds he claimed the whole estate, and for more than ten years received the rents and profits. Although the deed foreclosing the estate of Archange was void, he nevertheless received and enjoyed the rents and profits of the whole estate as if it was valid. The court of appeals holds, very properly as I think, that while this deed did not operate to transmit title, it played an important part in rendering his possession adverse. He held adversely to Archange and the children of Archange as to all they could sue for. They could sue for all that came to them from the Allard conveyance, in remainder after the death of Rosalie, the life tenant. Her outstanding lease would not be in the way of a recovery of such interest. As to the part given to the children of Archange, in the will of their grandmother, they could not sue on account of the

outstanding term in her tenant, which did not expire till 1865. The one-half she acquired from Joseph Montaigne had passed by her will, one-third to Laurent, one-third to Laurent's children, one-third to Archange's children, subject to the lease.

The court held that as to that interest the possession of the Daltons was not adverse till 1865, which left the defendants outside of the statute of limitations, this suit having been brought in 1873. The plaintiff is satisfied with this ruling, and the defendant is not a complainant before us of any error in respect to it. When the courts below held that this possession of the Daltons was adverse as to that portion of the title of Archange and her heirs which came from the Allard deed, being a one-fourth interest, it was predicated upon the assumption that for ten years prior to 1873, Archange, in her lifetime, and her children after her death, could sue for their rights. The fact, however, is clear on this record, that Archange was a married woman, and that the saving clause of the statute preserved her right unimpaired. The agreed statement recites that Archange married McDowell and had by him the children from whom plaintiff holds deeds. It also recites that Archange died in 1871, intestate, and her husband died intestate in 1864. She was, therefore, under coverture between May, 1862, when it is claimed the Dalton title became adverse, and 1864, when her husband died. The statute did not run against her during those two years; and a deduction of these two years leaves the defendant with only nine years of adverse possession. It follows from this that upon the record of the case, the plaintiff ought to recover for the rest of the title to the children of Archange, which vested in him by his deeds, being nine-forty-eighths of the same, making in all fifteen-forty-eighths of the whole.

It is urged by respondent here that the question whether Archange McDowell was a married woman March 2nd, 1861, when she executed the deed of trust which was

foreclosed in Dalton's favor, was not raised in the circuit court. In the court of appeals, Archange was treated as a married woman, when she made the deed. It was regarded as void for the purpose of transmitting title, and took its place as a fact among the facts of adverse possession. It would be illogical and contradictory to hold that her coverture avoided her conveyance to Dalton, but that it was unavailing to save her estate from his claim of right by adverse possession; while the law is as explicit in saving her right to sue during coverture, as in avoiding her sole deed, made during coverture. Moreover, her coverture, recited in the agreed statement, is properly within the scope and terms of the sixth instruction given at the instance of defendants, in which it is declared " that if the defendants, and those under whom they claim, have had the quiet, peaceable, continuous and adverse possession of the premises in dispute, since March or April, 1861, then the said plaintiff is not entitled. to recover." I do not think the fact of coverture can be brought into the case without giving to it its full effect on the title by adverse possession as well as by deed.

It is unnecessary to examine the instructions in the case. They are declarations relating to the deeds or possession, which are disposed of in our decision upon the title and the extent and effect of adverse possession. The plaintiff has a great number of instructions applying to the long possession of Rosalie, by virtue of which he claimed the fee simple to the whole property. In view of the fact that his replication seems to concede a portion of the title in defendants, these instructions are out of place in this case.

The plaintiff insists that he was entitled to a judgment for the admitted rents and profits, and that the court 5. EJECTMENT: parties: landlord and tenant: damages. erred in rendering a judgment for only nominal damages. This point is not noticed in the decision of the court of appeals.

An action in ejectment must be brought against the

actual occupant of the property. The landlord of the occupant is not a necessary party. Our statute permits him to come in and defend. It has been said that he possessed this right at common law, prior to any statute. *Fosgate v. Herkimer Man'f'g Co.*, 12 N. Y. 580. The plaintiff sues the defendants, alleging them to be in joint possession. In their answers they deny the averment of joint possession. Dolan pleads that he is in sole possession of the north half of the lot, and has no possession of the south half. Casseleggi pleads that he is in sole possession of the south half, and has nothing to do with the north half. Pauline Dalton pleads that she is not in actual possession of either parcel, but that she rented the north half to Dolan, and the south half to Casseleggi, who occupy as her tenants. The evidence developed at the trial shows that these pleas were literally true. When this fact was developed it was apparent the plaintiff had made a misjoinder of parties defendant. Distinct actions ought to be brought to recover distinct and separate possessions. *Keene v. Barnes*, 29 Mo. 377; *Walsh v. Varney*, 38 Mich. 73; *Fosgate v. Herkimer Man'f'g Co.*, 12 N. Y. 585. The plaintiff ought not to have been allowed to proceed with two distinct actions of ejectment in one. It not appearing in the petition, the defendants cannot demur for the misjoinder.

It seems to me the defendants brought the matter up properly in an instruction that the plaintiff could not recover as long as he persisted in proceeding in this way. But Judge Scott intimates in *Keene v. Barnes*, that the proper method of taking advantage is by motion to compel the plaintiff to elect as to which cause of action he will proceed with. The instruction that plaintiff could not recover ought to have been treated, to say the least, in the nature of a motion to elect. The instruction was refused and judgment went for plaintiff, but for only nominal damages.

The error of this practice, as it stands on the record, is not a material one against the defendants, as to the re-

covery of possession from them. Whether their possession is joint or several, the single writ for possession will be the same thing against them in effect as if two writs issued, one against each. Neither is called upon to respond for rents and profits received by the other. No substantial injustice can accrue to them by reason of this error of the proceeding. But when the plaintiff asks for a joint judgment against them for rents, the injustice at once appears. Dolan would be paying the damages assessed for an ouster from a tenement he had nothing to do with. And the same thing would happen to Casseleggi. The agreed statement of the rents and profits relating to both lots, does not help the plaintiff out. It fails to show how much ought to be accounted for by Dolan, and how much by Casseleggi, for the two stores occupied by them separately. As for Pauline Dalton, she defends only as landlord. She ought not to be called to respond for rents and damages which the court is unable to assess against her tenants as the actual occupants of the land. The plaintiff must take the necessary consequences of his violation of the proper method of procedure, in the loss of his rents and profits. He will have to be satisfied with getting his title through in the face of such irregularity.

So far as the adjudication and recovery of his right of possession is concerned, we allow the judgment to stand, because the error is immaterial and works no injustice. But we could not recognize it as applying to the rents and profits without sanctioning an injustice resulting from a violation of our methods and forms of procedure. If the action was in the nature of an equitable ejectment, we might consider the propriety of giving a decree of accounting for the rents and profits.

The conclusion we have reached upon the whole case is, that according to the evidence in the record the plaintiff was entitled under the law to recover the additional nine-forty-eighths of his record title, but that he was not entitled to a judgment for rents and profits beyond a

nominal sum. The misjoinder of parties defendant does not work any material injury so far as the recovery of possession is concerned, but it would result in great prejudice to the defendants to allow the damages to be assessed as prayed for by plaintiff. The judgment as rendered in the circuit court might be corrected by substituting fifteen-forty-eighths for one-eighth, as therein recited. But we think it best to reverse the judgment of the court of appeals and the judgment of the circuit court, and order the circuit court to enter a new judgment in the place of the old one, in all respects similar to it, except as to the amount recovered, which in the new judgment will be fifteen-forty-eighths of the premises sued for.

The other commissioners concurring, the judgments of the court of appeals and the circuit court are reversed, and the circuit court of the city of St. Louis is ordered to enter up a new judgment in conformity with the directions of this decision.