Theodore F. Decker, appellee, v. Rudolph Decker, appellant, et al., appellees.

Filed March 19, 1902.  No. 10,396.

Commissioner's opinion, Department No. 1.

1. **Deed Absolute in Form:** Given to Secure Debt: Parol Defeasance. In equity an unrecorded deed absolute in form, given to secure a debt, with parol defeasance, is a mortgage; and when the debt secured thereby is paid, and the deed surrendered to the grantor for destruction, the lien of the mortgagee is extinguished, and the title revests absolutely in the mortgagor if the rights of innocent third parties have not intervened.

2. ——: ——: ——: Possession: Rents and Profits. In such case, if the grantee in the mortgage deed takes possession of the premises under an agreement with the grantor or mortgagor that the rents and profits shall go to pay taxes and compensate the mortgagee for the trouble in caring for the premises during the mortgagor's absence, the mortgagee can not acquire title by adverse possession.

3. **Essence of Estoppel.** It is of the essence of estoppel that the estoppel asserter has relied to his disadvantage upon the conduct or silence of the other party.

4. **Estoppel:** Knowledge. Under the facts in this case, *held*, that defendant was not estopped from asserting his title to the land for having received his pro-rata share of rents and profits collected by the administrator who took possession of his land supposing it to be that of the intestate, he being at the time in a distant state, and there being nothing in the record to connect him with knowledge that the rents were derived from land to which he claimed title.

5. **Deed in Fact Mortgage:** Finding of Trial Court Can Not Be Sustained. Where the uncontradicted evidence shows that a deed, absolute in form, was in fact a mortgage, that the debt secured thereby had been discharged and the deed surrendered and destroyed, a finding by the trial court that the title vested in the grantee absolutely, and at her death descended to her heirs at law, can not be sustained.

6. **Evidence.** Evidence examined, and *held* not to sustain the finding and judgment of the trial court.

Appeal from the district court for Cass county. Heard below before Ramsey, J. *Reversed.*

*Jefferson H. Broady* and *J. E. Douglas,* for appellant.

*Matthew Gering* and *Beeson & Root, contra.*

KIRKPATRICK, C.

This is a suit brought in the district court for Cass county by Theodore F. Decker against Rudolph Decker and others to quiet title to the southeast quarter of section 7, town 12 north, range 11 east in said county and to have partition of the land. Plaintiff and the principal defendants in this suit are the children of Jefferson Decker and Rosan Decker. Theodore F. Decker, plaintiff, made all of his brothers and sisters defendants in this suit because they declined to join as plaintiffs. The real controversy is between Rudolph Decker, defendant, who was the owner of the land described, and all the other defendants, who were interested in having the land decreed to be a part of the estate of their mother, Rosan Decker, deceased. Some time prior to 1857, Jefferson and Rosan Decker, husband and wife, removed from Pennsylvania to Cass county, this state. Rudolph, their eldest son, patented the land in controversy in 1857, the patent being issued by the government in 1860. Some time in the year 1859 Jefferson Decker died, leaving a will, by which he bequeathed all of his property to Rosan Decker during her lifetime. Rudolph remained with his mother for some seven years after his father's death, helping to work the home farm, as well as improving the land in controversy. In 1864 or 1865 he decided to go to Montana or some other western state, and upon his departure executed to his mother a deed to the land in dispute, which was never recorded. Rosan Decker, the mother, died in 1892. She had been a very thrifty woman, kept and improved all the land owned at the death of her husband, looked after and improved somewhat the land in controversy, and at the time of her death had accumulated property of the value of $50,000, about $15,000 of which was in cash and on deposit in various

banks. Rudolph, after he left home in 1864 or 1865, came back twice, once in 1875 and again in 1884, and came back a third time shortly after the death of his mother. The other children had all married and left home, and for many years prior to her death the mother had lived alone or with her tenants, on the home place. Upon the death of Rosan Decker, an administrator was appointed, who took possession of the land in controversy, known as the "Rudolph Decker Quarter," in all respects the same as all other land belonging to the estate, looked after it, collected the rents, etc., pending the settlement of the estate. At or about the time of the mother's death, it was not known where Rudolph and one or more of the other brothers were, a belief prevailing that Rudolph was dead. J. G. Romine was made a party defendant, and filed a cross-bill setting up a judgment which he had obtained against Jefferson Decker, Jr., one of the heirs, claiming that the land in suit belonged to Rosan Decker, and that his debtor was one of the heirs, and that he was entitled to the payment of the balance due on his judgment from the eighth interest of this heir. Susan Grossclaude, one of the married sisters, filed an answer and cross-bill, setting up, among other things, that the land in controversy had belonged to Jefferson Decker, her father, and that, while Rudolph was permitted to enter the land in his own name, the land in fact belonged to Jefferson Decker during his lifetime, and therefore became the property of the estate. No testimony was offered in support of this answer and cross-bill. All other heirs made default. Trial was had to the district court, which resulted in a finding and decree adjudging the land to be the property of the estate of Rosan Decker, and ordering a partition of the premises. From this decree Rudolph Decker prosecutes appeal to this court.

There seems to be but a single question of fact involved in the case, namely, whether the land in controversy belonged to Rudolph or was the property of Rosan Decker, his mother, and hence that of the heirs at law, share and share alike. Appellant's contention in the trial court was

20

that the deed by him to his mother for the land, though absolute in form, was in effect a mortgage; was so understood by both parties; and was given to secure money advanced by his mother to him when he left home for the west; that the debt was subsequently paid, and the deed surrendered to him and by him destroyed. The testimony of appellees is that at the time Rudolph left home his mother took possession of the land, collected the rents, and paid all taxes thereon up to the time of her death. All the children of Rosan Decker who testified as witnesses agreed substantially that the mother always referred to this land as Rudolph's. Several of them testified that she had repeatedly said that she was taking care of the land for Rudolph, and that when he came back it should be his land. She said to her tenants frequently that the land belonged to Rudolph, and that she was merely taking care of it for him. To one of her sons, who lived near Ashland, Saunders county, and who was down to see her some time prior to her death, she said that Rudolph had paid her back all the money he had ever borrowed of her, and spoke of the land as Rudolph's. When Rudolph visited his home in 1884 he sought to induce his brother at Ashland to take charge of the land and rent it for him; but this brother declined to do so, saying that he had matters enough to attend to of his own. One of the daughters testified that at the time Rudolph left home it was agreed between him and her mother that the latter should have charge of the land, should pay the taxes, and have all proceeds to be used in taking care of it and helping to support the younger children; that the mother told Rudolph she would do this, and take care of the land for him. Upon Rudolph's return in 1875, she said, in the presence of the daughter last mentioned, that she was glad he had come back home, and that now he could take care of his own land, and that she had enough things to look after without that. When Rudolph came back he assisted in putting down a well on this land, did some other work there, and also took some corn from the place for feeding purposes.

Theodore Decker, plaintiff in the suit, did not appear at the trial, but gave his deposition, the material part of which is as follows:

Q. When did you last see your brother Rudolph?

A. I think it was in 1862 or 1863.

Q. Are you acquainted with the southeast quarter of section 30, town 12, range 11, Cass county, Nebraska, being the land entered by your brother Rudolph?

A. I am.

Q. Who occupied this land from 1857 till you left Nebraska in 1864?

A. My mother, Rosan Decker.

Q. Was it occupied or controlled by your mother?

A. Yes, occupied and used.

Q. Did your brother Rudolph have anything to do with it?

A. Yes, he owned it.

Q. When did your brother leave Nebraska,—before or after you did?

A. I can't say.

Q. Do you know whether or not he ever claimed to own the land?

A. I do. He did own it.

Rudolph swears that at the time he left home he borrowed $300 from his mother, and gave her a deed to the land, to be held by her as a mortgage until such time as he could pay the debt; that his mother was to take care of the land for him as his tenant, and was to have all the proceeds of the farm after paying the taxes; that some years later he repaid this money to his mother, and that thereupon she gave up the deed, which he had given as a mortgage, and that he destroyed it in her presence; that during all of the time his mother had control of the premises she had control and was taking care of them for him; that he had never conveyed to her the title; and that he had always owned the land, and had always claimed it.

It is suggested that the testimony of Rudolph is inadmissible in this case, for the reason that appellees are rep-

resentatives of a deceased person, and that under the statute Rudolph could not give in evidence a transaction between himself and the deceased mother. Upon this question it may be said that the greater part of Rudolph's testimony seems to have been admitted without objection. Counsel for appellees in their cross-examination went over the entire direct testimony of Rudolph, and required him to state several times over the entire transaction between himself and his mother, which consisted in his borrowing $300 and giving his mother a deed for the place, which was intended to be a mortgage, and was to be held as such and was not to be put upon record; his repayment of the amount of money he had borrowed; the surrender to him by his mother of the deed and his destroying it. Appellees having themselves brought out this testimony from Rudolph, they are not now in a position to have the same excluded or to ask this court not to consider it. Again, it may be said, that if the testimony of Rudolph Decker is excluded, there is absolutely no competent evidence that the deed was ever executed and delivered to his mother, and appellees would be in no better position.

At the mother's death there was found in her room more than $5,000 in gold and silver, and the patents for all of her land, and also the patent for Rudolph's land. None of these patents had ever been recorded. But the deed which Rudolph had given her was not found among her papers. This tends to support Rudolph's testimony that it was given up and destroyed. When the administrator of Rosan Decker was appointed and took possession, he assumed charge of this land, as well as the remainder of the estate, the rents collected therefrom being divided among the various heirs the same as proceeds from the estate, and the share belonging to Rudolph, with other moneys due him from the estate, was sent to him in Texas. These facts were shown by appellee for the purpose of estopping Rudolph from now claiming title to the land. His receiving the money can not be said to have such effect. There is nothing in the testimony to show that Rudolph knew what

was being done by the administrator, or that he knew that any part of the money sent him was a part of the rent derived from his own land.

The testimony relied upon by appellees to sustain the finding of the trial court is that of the witness Romine, who testified that it was his understanding from what Rosan Decker told him that she had let Rudolph have some money and that he had deeded to her the land. The witness testified that he had no knowledge whether the instrument was intended as a mortgage or a deed, or whether Rudolph repaid the money to his mother. Concerning this testimony, it may be said, first, that, aside from what is given by way of declarations coming from Rudolph Decker, it has no probative value whatever. The witness claims his memory is poor, and does not attempt to give more than his understanding of the matter. He had seen the deed after Rudolph had left, but he could not say in what year. He said the deed had been acknowledged before some justice of the peace, but he did not remember the name of the justice, and he was unable to say whether or not the deed had been witnessed. Testimony of this character will not support a finding and judgment which deprives a party of his title to real property. All the witness said might be true, and in no way conflict with the testimony of Rudolph and other witnesses, and in no way tends to support the allegations of the petition. The witness does not pretend to testify to statements made by Rosan Decker, but merely gives his understanding derived from such statements. In so far as this testimony purports to give declarations of Rosan Decker, it is clearly inadmissible, as being hearsay. Rosan Decker herself, if living, and the plaintiff in this action, would not have been entitled to have these declarations admitted in her favor, and the rule is equally well settled that after her death such declarations are inadmissible. The rule is that declarations or admissions made by a party when in possession of real estate, and afterwards deceased, are admissible as competent evidence to show the character of his possession, but not for the pur-

pose of building up or destroying the record title. *Sutton v. Casselleggi*, 5 Mo. App., 111. In the case cited it is said: "Declarations by a party in possession are admissible to show the nature of his possession, or under what title he claims to hold, but such declarations can not be made to prove the title itself." The same rule is followed in *Dodge v. Freedman's Savings & Trust Co.*, 93 U. S., 379. In that case it is said: "Such declarations are competent only to show the character of the possession of the person making them, and by what title he holds, but not to sustain or to destroy the record title." The same doctrine is announced in *Mooring v. McBride*, 62 Tex., 309; *Osgood v. Coates*, 1 Allen [Mass.], 77; *Gilbert v. Odum*, 69 Tex., 670, 7 S. W. Rep., 510; *Morrill v. Titcomb*, 90 Mass., 100. The rule is equally well settled and established by authority that declarations of one in possession of land in disparagement of his own title are admissible against him and those claiming under him. *Osgood v. Coates, supra.* On the other hand, the evidence of the plaintiff in the action, to the effect that the title was in Rudolph, it being his property, as well as the testimony of the other children of the deceased mother to the same effect, and that the mother had repeatedly declared that the land belonged to Rudolph, and had always characterized the land as that of her absent son, and that she was merely taking care of it for him, is entitled to great weight, not only because in so testifying they gave evidence against their own interests, but because the declarations of the decedent were against interest, or in disparagement of title. *Potter v. Waite*, 55 Conn., 236, 10 Atl. Rep., 563; *McLeod v. Swain*, 27 Am. St. Rep., 229. Appellees' testimony is in no way inconsistent with or contradictory of the evidence of Rudolph that he owned the land in controversy. All the evidence offered by appellees may be admitted to be true, and yet in no way tend to establish that the land in controversy was the land of Rosan Decker. The evidence of Rudolph alone, even if it had not been corroborated, would be sufficient to establish his title to the land; for the undisputed reasonable testi-

mony of one witness, though a party to the action, is en-
titled to controlling weight in determining a question of
fact. *Burnham v. Norton*, 100 Wis., 8. It follows that
the judgment of the trial court is not sustained by suffi-
cient competent evidence. The testimony of Rudolph
Decker is clear and convincing that at the time he gave
the deed to his mother, it was simply as a mortgage secur-
ing a loan, that he had paid the debt, and that the instru-
ment was given up and he destroyed it. This is strongly
corroborated by the testimony of the other heirs. This
being true, Rosan Decker never had the title, and whatever
right she had as mortgagee was divested by the payment
of the debt and the surrender and destruction of the deed.
*Schade v. Bessinger*, 3 Nebr., 140; *Commonwealth v. Dud-
ley*, 10 Mass., 402; *Farrar v. Farrar*, 4 N. H., 191; *Mussey
v. Holt*, 24 N. H., 248, 252. The testimony of Rudolph
also shows, and this is corroborated by that of the other
heirs, that his mother had possession for him. This being
true, the heirs could acquire no right under claim that her
possession was adverse. *Johnson v. Butt*, 46 Nebr., 220;
*O'Boyle v. McHugh*, 69 N. W. Rep. [Minn.], 37.

It is contended by counsel for appellees that appellant
should not have been permitted to introduce any evidence
to show that the instrument he gave was in fact a mort-
gage under an answer which in effect amounted to a de-
nial. The cause was tried upon an amended reply filed
and relied on by appellee, a portion of which is as follows:
"Further replying to said answer the plaintiff alleges
that the deed for the premises in controversy made and
executed by defendant Rudolph Decker to the said Rosan
Decker, was absolute, and was delivered to her by the
said defendant without any conditions whatever attached
thereto." This reply squarely puts in issue the question
which was really tried, namely, whether the conveyance
made by Rudolph was in fact a deed or a mortgage. This
is sufficient to dispose of the question suggested by ap-
pellees, even if it had other and further merit.

In this case the evidence discloses that Rudolph Decker

pre-empted the land, paid the government price and that the patent therefor was issued to him by the government. His title seems to have been perfect. It is certain that no consideration has ever been paid to him at any time for parting with the title. He was directed by his father, while on his death-bed, to remain with his mother, and work for her support, and to assist her in caring for and rearing the smaller children. This he seems to have done, remaining with his mother and working for her after his father's death for a period of seven years, and when he did leave gave into his mother's possession his land, exacting only, as rent therefor, the payment by her of the taxes. She kept this land with her estate and reaped the benefits from it for twenty-five years. It is inequitable and unjust to deprive him of the title to his land without consideration upon evidence so slight and unsatisfactory as that found in the record. The finding and judgment of the trial court clearly appear to be wrong, and should be reversed and set aside, and a decree entered in this court dismissing the petition of appellee Theodore F. Decker, and the cross-petition of J. G. Romine and Susan Grossclaude, and quieting the title of appellant Rudolph Decker to the premises in controversy.

HASTINGS and DAY, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and decree entered here dismissing the petition and cross-petitions of appellees and quieting title in Rudolph Decker.

JUDGMENT ACCORDINGLY.