JOECKEL vs. EASTON.

1.  A recital in a deed only operates as an estoppel in cases in which the declarations of the grantor would be evidence.   A recital is not competent to shew title in the grantor.

2.  In a contest between two vendees of the same vendor, either may deny the title of his vendor.

## ERROR to St. Louis Circuit Court.

### *Statement of the Case.*

This was an action of ejectment to recover a parcel of land near the city of St. Louis, brought by the defendant against the plaintiff in error, in which judgment was rendered in favor of the plaintiff below, to reverse which this writ of error is prosecuted.

By the documents given in evidence on the part of the plaintiff below, it appears that a person whose name is given as " J. Smith" claimed lots numbered 9 and 10 in the town of Little Prairie, New Madrid county, before the board of commissioners, and on the 9th July, 1811, the board, after hearing testimony, granted to *J. Smith* two arpens of land, and order that the same be surveyed on his possession at the expense of claimant.  On the margin of the record of the commissioners, opposite the claim, are the letters and figures "Cer. 1116," meaning Certificate No. 1116;— that on 18th May, 1815, the Recorder of Land Titles took testimony in relation to lands injured by earthquakes, by which it appears that the above was among the injured land.   In the list made by the Recorder of relinquishment of lands materially injured by earthquakes in New Madrid, under act of Congress of 17th February, 1815, it appears that the above lots were relinquished by Rufus Easton.

The Recorder issued a certificate, bearing date November 16, 1815, and numbered 159, by which it is certified that a lot of two arpens in the village of Little Prairie in the county of New Madrid, which appears by the books of his office to be owned by J. Smith, has been materially injured by earthquakes, and that J. Smith, or his legal representatives, are entitled to locate any quantity of land not exceeding 160 acres, &c., in the usual form of a New Madrid certificate, which certificate was delivered by the Recorder to Rufus Easton.

On the 22nd October, 1816, James Smith, (blacksmith) and Sarah his wife, executed a deed purporting to convey to Rufus Easton in fee simple two arpens of land, "situate in the village of Little Prairie in the county of New Madrid, granted to the said James Smith by the late board of commissioners for the adjustment of land titles, &c, by the name and description of J. Smith, and known on their books by claim and certificate No. 1116;" also one other lot, which said lots of ground and tracts of land have been materially injured by earthquakes, &c., and conveying and assigning to Easton the right and privilege of location and the land so to be located.  This deed was acknowledged and recorded in New Madrid county on 16th Nov., 1816.

On the first of November, 1816, Rufus Easton gave notice to the Surveyor General of location of certificate No. 159, on land including the premises in dispute.   In March, 1818, the survey was made under the authority of the United States, and the land so surveyed was held and claimed by Easton thenceforth until the 25th June, 1826, when he by deed conveyed it to William Russell.— On the 28th May, 1827, the land was patented to J. Smith or his legal representatives, and on the 18th February, 1839, William Russel, by deed, conveyed the land to the plaintiff.

The plaintiff read in evidence a deed bearing date 20th January, 1840, whereby Chandler Lewis and Robert Day convey to the defendant, Joeckel, the parcel of land sued for, describing it as part of the tract of 160 acres granted to J. Smith upon New Madrid certificate No. 159.   The plaintiff then proved the possession of said land by Joeckel, and the yearly and monthly value.

The defendant read in evidence New Madrid certificate No. 160, for 160 acres of land, in favor of James Smith or his legal representatives, issued in lieu of a lot of one arpent in the town of New Madrid; also a transcript from the books of the Recorder of Land Titles, showing a delivery of that certificate to Rufus Easton; also, a receipt of Rufus Easton to the Recorder for the deed of Smith and wife to Easton for the purpose of having ti recorded in New Madrid.

The plaintiff then read in evidence a deed from James Smith and wife to Chandler Lewis and Robert Day of 17th August, 1838, by which Smith and wife convey to Lewis and Day all "the

lands located for him (James Smith) and in his name, by virtue of what is usually called in the State of Missouri a New Madrid certificate, granted by Frederick Bates, recorder of land titles in the then Territory, now State, of Missouri, be the same located where it may; which said certificate is numbered one hundred and fifty-nine; also one other certificate numbered 160." This deed also includes certificates No. 156, 158, 334.

The plaintiff then proved that the defendant entered upon the land and held the same under the deed of Lewis and Day, to him as purchaser from them.

By the oral testimony, it is proved that the persons who executed the deed to Lewis and Day, are the same who made the deed to Easton.

There is some oral evidence tending to shew that James Smith (blacksmith) never resided at Little Prairie, and is not the person who owned the injured lots there—and some tending to prove that he is the person to whom the two lots were granted by the commissioner.

During the progress of the trial, the plaintiff offered in evidence a document certified by the recorder of land titles, being an extract of a list kept by the recorder of relinquishments of lands materially injured by earthquakes, under the act of Congress of 17th February, 1815, which was objected to by the defendant and the objection overruled.

The plaintiff then asked and the court gave to the jury the following instructions:

1. If the jury find that before the location of New Madrid certificate No. 159, in the name of J. Smith or his legal representatives, said Smith had by deed conveyed to Rufus Easton absolutely and in fee simple the injured lands in lieu of which said certificate issued, together with the right and privilege of new location, and the land so located under the act of Congress of the 17th February, 1815, then the said certificate located and the patent issued thereon, enured to the benefit of the said Rufus Easton and his legal representatives.

If the jury find from the evidence that J. Smith in the certificate No. 159, and patent mentioned, did on 22d day of October, 1816, execute and deliver to Rufus Easton the deed given in evidence by the plaintiff of that date; that the lands thereby conveyed are the lands in lieu of which said certificate No. 159, and patent issued; that the said certificate was delivered by the recorder of land titles to said Easton, and by him located as the legal representatives of said Smith, then the title of said Easton to the lands so located is valid as against said Smith and those claiming under him by deed made after said location and patent.

3. If the jury find that James Smith who executed the deed to Chandler Lewis and Robert Day, bearing date the 17th August, 1838, is the same person who executed the deed to Rufus Easton, bearing date the 22d October, 1816; that the defendant entered upon and holds the land in dispute, claiming title thereto under the said deed from James Smith to Chandler Lewis and Robert Day; that the land so entered upon and held is part of the land located by virtue of New Madrid certificate No 159, then as against the said defendant, the said James Smith, who made the said deeds, must be taken by the jury to be the person named as grantee in the certificate of location.

4. If the jury find that the defendant entered upon the land in dispute before the commencement of this suit and then held the same and still holds, claiming title thereto under the deed from James Smith to Chandler Lewis and Robert Day of the 17th August, 1838; that the land so entered upon and claimed as part of the land located by virtue of the certificate No. 159, in the name of J. Smith or his legal representatives, then the defendant is estopped from denying in this action that said James Smith is the person called J. Smith in said certificate.

5. If the jury find that both parties claim under the same James Smith, as the grantee named in the New Madrid certificate and patent, then the jury ought as between these parties, to find that said James Smith is the grantee in said certificate and patent named.

To the giving which instructions the defendant excepted, and asked the following:

1. That there is no legal evidence before the jury, that Rufus Easton ever relinquished to the United States the land injured by earthquakes in Little Prairie, on which the certificate No. 159 issued.

2. That if the jury find from the evidence that the two arpens of land situate in the village of Little Prairie, as mentioned in New Madrid certificate No. 159, (offered here in evidence) were

confirmed to another person and not to James Smith, (blacksmith,) who made the deed to Rufus Easton, they will find for the defendant.

3. That the new location of the land in controversy by Rufus Easton, does not of itself give him or those claiming under him, any title to the land so located.

4. That unless the jury believe from the evidence that James Smith, (blacksmith,) whose deed to Rufus Easton has been read in evidence, is the same person mentioned and described in the commissioners certificate No. 1116, as J. Smith, original claimant to two arpens of land situate in Little Prairie, by virtue of permission of the proper Spanish officer, and also of actual inhabitation and cultivation prior to, and on the 20th December, 1803, they will find for the defendant.

5. That if the jury believe from the evidence that the plaintiff claims under the deed of James Smith and wife to him, given in evidence for plaintiff in this case, purporting to convey land in New Madrid, and that the defendant claims the land sued for under the deed of said James Smith to Lewis and Day, the defendant is not estopped or prevented thereby from shewing that Rufus Easton never had any title to the land sued for in this action, and therefore the defendant is not prohibited from shewing that the plaintiff has no title to the land in question, as a defence to this action.

6. That if Easton at the time said certificate issued, No. 159, had no interest in the said two arpens of land in the village of Little Prairie, upon the injury to which said certificate purports to have issued, then no title was vested in said Easton by the said certificate and patent given in evidence.

The third instruction was given by the court and the others refused, which refusal was excepted to. The defendant moved for a new trial, which motion was overruled, and the decision excepted to. There was a verdict and judgment for the plaintiff.

SPALDING & TIFFANY, *for Plaintiff in error, insist:*

1. That the abstract from the recorder's book of relinquishments was improperly admitted in evidence: 1st. It was incompetent to prove the relinquishment of the land by Easton. 2nd. It was not and could not be evidence for any other purpose.

2. Several of the instructions raised the question whether the defendant below, Joeckel, was estopped by his acceptance of the deed of Lewis and Day, who claimed under James Smith, and by his taking possession under that deed, from denying the title of Easton who also claimed under said Smith by prior deed. The court below decided in favor of the estoppel. The plaintiff in error denies the correctness of that decision, and maintains, *"That the vendee in fee simple absolute of a tract of land is not, by his acceptance of the deed or taking possession thereunder estopped from denying the title of his grantor or of any person claiming under the grantor, but holds adversely to them as to the rest of the world, and may maintain his possession by showing their want of title."* For this doctrine see the following authorities: Blight's lessee vs. Rochester, 7 Wheat. R., 535; 3 Peters' R., 43; 4 Peters' R., 506; 5 Peters' R , 402; 16 Peters' R., 53; 2 Marshall's R., 27; 2 Metcalf R., 32; 4 Littell R., 274; 9 Mo. Rep., 477, Macklot vs. Dubreuil.

3. The doctrine established in the case of Macklot vs. Dubreuil, (9 Mo. R., 477,) that, *a mere naked possession without color of title, is not permitted to question the validity of the evidences of title emanating from public authority,* is not impeached by the plaintiff in error; but he insists that it is not applicable to the present case, for the defence in the court below was that James Smith, the blacksmith, from whom Easton took his deed, was not the J. Smith to whom the confirmation was made:

1st. There was stong evidence that James Smith who made the deed to Easton was not J. Smith, the owner of the land confirmed.

2nd. If James Smith who conveyed to Easton was not the confirmee, then his deed passed nothing to Easton.

3rd. The location and survey was made in the name of J. Smith, and the patent issued to J. Smith or his legal representatives.

4th. Thus, every step of the title, from its inception to its final perfection, was in the name of J. Smith, and of course the final title vested in the same man to whom the confirmation had been made.

5th. The fact that Easton intervened and got possession of the certificate and located it, did not vest title in him, nor in another man by the name of Smith, but the title when it emanated, *vested in the original confirmee or his legal representatives; said original confirmee being named as the recipient of the title.* 5 Mo. Rep., 147, Wear & Hickman vs. Bryant; 13 Peters R., 436, Bagwell vs. Broderick.

6th. If there were two men of the name of J. Smith, the title by the confirmation and patent vested in the one who had been the occupant before the change of government, and on whose possession it was confirmed; and not in the one who after the confirmation personated him, and made a deed to Easton.

7th. Easton, if he bought of the wrong Smith, got no title, and therefore his relinquishment gave nothing to the United States; as Easton's location therefore, gave nothing to the United States, it does not lie in his mouth to claim the land located as equitably his, or that the location enured to his benefit.

4. The first and second instructions given for the plaintiff below are wrong. They assert the position, that if the person in whose favor a New Madrid certificate has issued, conveyed the injured land to a third person after said certificate has issued, that then the patent subsequently emanating to the original holder of the certificate by name, or his legal representatives, will vest the title in such third person, provided he cause the location to be made. 5 Mo. R., 147; 13 Peters R., 436; 4 Mo. R., 106; 1 Mo. R., 499, Hickman, et al. vs Gaw:

1st. The title in such case vests in the person named in the New Madrid certificate, or those claiming as his heirs or as purchasers or grantees of the land located.

2nd. Easton was not heir of J. Smith, and cannot claim in that way, nor is he purchaser of the newly located land.

3rd. The deed to him of James Smith does not convey the newly located land; it merely conveys the land in New Madrid county.

4th. The statement in it that it conveys the land that may be located, does not operate in *futuro* to pass title to land not yet existing, or rather known or designated. It is not a sufficient description. Besides, *"nemo dat quod non habit."*

GEYER, *for Defendant in error, insists:*

1. That the transcript of the records of the Recorder of Land Titles objected to by the defendant below, was competent evidence, being duly certified by the recorder, see Revised Code, Tit. Evidence. The ground of objection is not stated, and the document being duly authenticated, no objection can now be entertained to the relevancy of the evidence.

2. Both parties claim under the same James Smith. The deed under which the defendant claims from Smith to Lewis and Day, asserts as a fact, that certificate No. 159 was granted to him, James Smith; that the lands located by virtue thereof, were located for him. The deed from Lewis and Day to the defendant, describes the land conveyed as part of 160 acres granted to Jas. Smith upon New Madrid certificate No. 159; under these deeds, and under no other claim of title the defendant entered and held the land. These facts appearing, the defendant must be regarded as having admitted, that James Smith is the grantee in the certificate named, and the jury was bound so to find the fact, notwithstanding there was some oral evidence tending to render it doubtful. Smith vs. Burnham, 9 J. R., 306; Fitch vs. Baldwin, 17 John R., 161; Siglar vs. Van Reper, 10 Wend., 411; Jackson vs. Wilson, 9 J. R., 92; Jackson vs. Murry, 7 John, 5.

A party is estopped from denying a title which is recognized in a deed under which he claims. Hart vs. Johnson, 6 Ham., 87; so in case of a will; Dean vs. Cornell, 3 John. Cases, 174; accepting a deed from a grantor acts as an estoppel; Murphy vs. Burnett, 1 Law R., 106. All parties and privies are estopped by recitals in a deed, 2 S. & R., 381, Stewart vs. Buller; Jackson vs. Parkhurst, 9 Wend., 209; and the principle applies to recitals of one deed in another, Cowen vs. Jackson, 4 Peters, 83; Crane vs. Morris, 6 Peters, 598; one bound by an estoppel cannot prove a superior title in a stranger; Sikes vs. Basnight, 2 Dev. & Bat., 157.

In a contest for town lots, both parties claiming under the trustees, the defendant is estopped to deny the right of the trustees, McLain vs. Gregg, 2 A. K. Marsh., 454; see Green, et al. vs. Clark, 13 Vt., 158; Bush vs. Whitney, 1 D. Chapman, 369; Taylor vs. King, 6 Munf., 358.

A party who has executed a deed is thereby estopped from denying not only the deed itself, but every fact which it recites; and all persons under and through the party estopped, are bound by the estoppel. Stone vs. Wise, 7 Conn. R., 214; McDanal vs. King, Coxe, 432; see Coe vs. Talcott, 5 Day, 88; see also Jackson vs. Hennan, 10 Johns., 292; Brant vs. Livermore, 10 Johns., 358; Jackson vs. Ayres, 14 Johns., 224. The case of Macklot vs. Dubreuil, decided by this Court (9 Mo., 477) is not in point.

3. It appearing that the deed under which the plaintiff claims, dated 22nd Oct., 1816, was executed by the grantee named in the New Madrid certificate No 159; the title to the land located by virtue of that certificate, was vested in Rufus Easton, and passed to his assignees by the deeds given in evidence. That deed conveys to Easton the lands in lieu of which the certificate issued, and also the land to be located by that certificate. Easton was, and after him his assignee became the legal representative of the grantee, and both certificate and patent enured to their benefit, to all intents and purposes as if they had been expressly named. Bryan vs. Wear & Hickman, 4 Mo. R., 106.

Where lands are located and surveyed by the ancestor, and conveyed by him, and his heirs as such, afterwards take out a patent, they are estopped to deny the validity of their ancestors title. Bond vs. Swearenger, 1 Ham., 395; and a grantee in a deed is estopped from setting up a title under a patent made to himself, nor can his heirs, nor any person claiming under him question the title of the grantee on the ground that the patent is subsequent to the date of the deed. Allen vs. Parrot, 3 Ham., 170.

4. The certificate and patent are only *prima facie* evidence of title in Smith, and the title to the land located is to be determined according to the equitable rights of the parties therein. If therefore it be held that the deed from Smith to Easton does not convey the legal title to the lands located by the certificate, he acquired undoubtedly the equitable title, and being prior in time, is prior in right.

5. The instructions asked by the defendant were properly refused. The first, because whether *Rufus Easton* did or did not relinquish the injured lands to the United States, neither affects his title nor that of the defendant, because no former relinquishment was necessary to be made; the application for, and the acceptance of a certificate, operates the relinquishment; and because whether the injured lands were or were not relinquished, the certificate and location are nevertheless valid. The second, because it is immaterial whether the injured lands were or were not *confirmed* to James Smith, (blacksmith;) they were granted to him; nor was it necessary to prove either a grant or confirmation to him. The 4, 5 & 6, as well as the second, because the defendant was precluded from denying that James Smith is the grantee in the certificate and patent named.— The 6th assumes that Easton could have no title unless he was the owner of the injured lands at the date of the certificate; whereas the conveyance is as well of the land to be located, as of the original lots.

6. There is not any plausible pretence that there is any error in the finding of the jury on the facts; and there being no misdirection, or if any, none prejudicial to the party complaining, and upon the whole record it appears that the judgment is for the right party. Newman vs. Lawless, 6 Mo. R., 279, 301; Finney, et al. vs. Allen, 7 Mo. R., 419; Bellisime vs. McCoy, 1 Mo. R., 227;

Wear vs. McCorkle, 1 Mo. R., 419; Waller vs. English, 1 Mo. R., 534; Tate vs. Barcroft, 1 Mo. R., 115; Dube's heirs vs. Smith, 1 Mo. R., 224.

Scott, J., *delivered the opinion of the Court.*

The question in this case turns on the effect of the recital in the deed from James Smith to Lewis and Day, under whom the defendant claims. There is no doubt of the correctness of the proposition of the plaintiff, that a recital in a deed of a fact will generally conclude both the grantor and his privies, whether in blood, or in estate, or in law, and *this* whether the deed be indented, or a deed poll. The acceptance of a deed will create an estoppel against the grantee and those claiming under him. Such estoppels are founded on principles of legal policy, and this would seem to be the test of their efficacy. The cases on this subject are numerous, and there is no want of harmony among them. The principle on which estoppels created by mere recitals are binding, is the same as that which makes the admissions of a party evidence. The declarations of a grantor made at the time of the execution of a deed, are evidence against his grantee and those claiming under him. Judge Cowen says, the mere admissibility of the recital will depend upon the same principle as the admissibility of a declaration of the person executing the reciting deed. Hence in general, in order to determine whether a recital is evidence in a given case against a party, we have only to ascertain whether an acknowledgment or confession of the person who executed the deed would be competent. Notes on Philips, 3 vol., 1236. What is the nature of the recital relied on in this case? It is that the land in question was granted to James Smith by the United States, that is, in effect, that he was the owner of the land. This Court has held that a declaration by the owner of a chattel whilst he was in the possession of it, that he was the owner, was no evidence of his ownership. Turner vs. Belden, 10 Mo. R., 737. All the cases on this subject within the reach of the court cited by the plaintiff have been examined, and they are those in which the recital is of a fact which injuriously affects the interests of the grantor in the deed or at least of matters which in no way make in his favor. This observation is not intended to apply to that class of cases which hold, that in a controversy between two grantees under the same grantor, one is not precluded from showing an outstanding title adverse to that of the grantor. It would be strange if a party by estoppels could create evidence for himself. In the case of Hayne vs. Maltby, 3 Term Rep., 438, it appears that the defendant had purchased the privilege of using a cer-

tain patent machine from the pretended patentee. He had entered into certain covenants reciting the right of the plaintiffs to the patent and obliging himself to employ the machine with certain restrictions. This was an action for a breach of some of those covenants. The defendant among other things pleaded that the plaintiff had no right. The plaintiff demurred on the ground that the defendant was estopped by his deed from putting that matter in issue. Lord Kenyon said, now in point of conscience it is impossible that two persons can entertain different ideas upon the subject. But it is said that though conscience fails, the defendant is estopped in point of law from saying that the plaintiffs had no privilege to confer. The doctrine of estoppel is not applicable here.

This recital then being of such a character as not to create an estoppel, the case must be classed with that of Macklot vs. Dubreuil, 9 Mo. Rep., in which it was held that in a contest between two alienees under the same alienor, one is not precluded from shewing an outstanding title adverse to that of the grantor.

Something was said in the argument in relation to the encouragement that would be given to fraud, if Lewis and Day, and those claiming under them, they being affected with notice, were permitted to take from James Smith, after he had made a previous conveyance, a title deed, enter on the land under that deed, and afterwards disclaim that title. So far as this argument is based on the impolicy of the thing, it has been already answered. There is no evidence of actual fraud or of any design to commit one. The land in New Madrid was conveyed to Easton; that located in lieu of it, to Lewis and Day; and when we consider the multiplicity of questions that have grown out of the act of Congress, for the relief of the sufferers in New Madrid by the earthquakes, and the variety of opinion in relation to them, we should be slow in imputing fraud to men from the mere circumstance of their dealing in titles under that act.

The fact that the lots in New Madrid were conveyed to Easton after the certificate of the recorder, that they were injured by earthquakes, cannot affect his title. The mere taking a certificate did not compel a party to locate it, nor did it divest him of his right to his injured land; after taking a certificate he might if he pleased, destroy or return it and retain his land in New Madrid. The title to the injured land not being divested by merely taking a certificate of location, a conveyance of it by the owner is valid, and the patent being made to Smith or his legal representatives, and Easton being that representative as supposed in the instruction, the title enured to him according to the late decisions of this Court.

We do not see the relevancy of the abstract from the recorder's book of relinquishments. According to the case of Wear & Hickman vs. Bryant, 5 Mo. R., no formal relinquishment was necessary to confer title. On the location of the certificate, the title to the land relinquished passed to the United States. The locator by merely making the location and relinquishment, acquires no interest for himself, either legal or equitable.

The other Judges concurring, the judgment is reversed and the cause remanded.