# CHARLESTON.

CLARK, TRUSTEE, et al., v. SAYERS & LAMBERT.

Submitted March 1, 1904—Decided April 1, 1904.

| 55 | 512 |
|---|---|
| 57 | 193 |
| 57 | 194 |
| 55 | 512 |
| f61 | 418 |

| 55 | 512 |
|---|---|
| 63 | 17 |
| 63 | 458 |
| 63 | 496 |
| 63 | 695 |

1. CONTRACTS—*Construction.*

Practical construction of contracts is that given to agree-ments by the parties themselves by acts subsequently done with reference to the contracts. To such exposition of contracts, the courts pay high regard, and will effectuate it if they can do so consistently with the rules of law. (p. 521.)

2. GENERAL WARRANTY—*Defective Title.*

If one conveys land with general warranty which, at the time he does not own, or the title to which is defective, but he after-wards acquires good title to the same, such acquisition enures to the benefit of his grantee. (p. 527.)

3 PURCHASER—*Notice of Incumbrance.*

Where a subsequent purchaser has actual notice that the property in question was incumbered or affected, he is charged constructively with notice of all the facts and instruments. to the knowledge of which he would have been led by an inquiry into the incumbrance or other circumstances affecting the prop-erty, of which he had notice. (p. 528.)

4. PURCHASER—*Defective Title.*

One who claims the protection of a court of equity as a *bona fide* purchaser, must show that he had acquired the legal title before notice or knowledge of facts equivalent to notice. (p. 529.)

Appeal from Circuit Court, McDowell County.

Action by E. W. Clark and others against G. W. Lambert and others. Judgment for plaintiff, and defendants appeal.

*Affirmed.*

R. C. & B. McCLAUGHERTY and FLOURNOY, PRICE and SMITH, for appellants.

A. W. REYNOLDS and J. S. CLARK, for appellees.

MILLER, JUDGE:

Appellant, Georgt W. Lambert, appeals from a final decree, made and entered against him and David G. Sayers, by the

circuit court of McDowell county, on the 12th day of December, 1901, in the chancery cause of E. W. Clark and others, trustees, against them.

The cause was formerly in this Court upon an appeal—*Clark et al.* v. *Sayers et al.*, 48 W. Va. 33, and the decrees then appealed from were reversed, without prejudice to either party; and the cause was remanded to the circuit court, with leave to both parties to amend their pleadings and proof in accordance with the truth, that there might be a fair and final determination of the controversy between the litigants.

The decree complained of here is, in part, that the deed from defendant, D. G. Sayers to the defendant, George W. Lambert, bearing date of the 24th day of November, 1891, conveying one-third undivided interest in the tract of three thousand two hundred and twenty-six acres of land referred to in the cause, be set aside and annulled as fraudulent, and as a cloud upon the title of plaintiffs to said tract of three thousand two hundred and twenty-six acres of land; that the estoppel arising from the covenants contained in the deed from the defendant, D. G. Sayers and others to Joseph I. Doran, dated November 17, 1882, referred to in the cause, be enforced against said D. G. Sayers; that said Sayers shall convey by deed to the plaintiffs, or to such person or corporation as they shall direct, all of the title to one-third undivided interest of the said tract of three thousand two hundred and twenty-six acres of land, the title to which was derived by compormise, purchase and conveyance from the heirs of Joseph Jackson, Jr.; and that said Sayers and Lambert be perpetually enjoined from asserting or disposing of their claims of title to one-third of said three thousand two hundred and twenty-six acres of land under the said compromise and conveyance from the heirs of Joseph Jackson, Jr., and under the said deed from Sayers to Lambert.

The material facts in the case, briefly stated, are as follows: By patent of the Commonwealth of Virginia, bearing date on the 1st day of December, 1854, there was granted unto George W. G. Brown, Samuel L. Graham and Joseph Jackson, Jr., a certain tract of land, containing three thousand two hundred and twenty-six acres, lying in Tazewell County, Virginia, (now McDowell County, West Virginia,) on the waters of Sand Lick Creek, and on the waters of Spice Creek, on the Laurel Branch,

and other small branches, but mostly on Sand Lick Creek, all being waters of Tug River, adjoining a tract of Wm. P. Cecil of six hundred and sixty-two acres; a tract of James B. Harman of one hundred and fifty acres, and adjoining a survey of James B. Harman of one hundred and thirty-one acres, which tract is bounded as follows: Beginning at two chestnut oaks by a cliff of rocks on the east side of Sand Lick ridge, about twenty yards from the top of said ridge on Spice waters, a corner of Wm. P. Cecil's six hundred and sixty-two acre tract, etc. No partition of this tract of land appears to have ever been made by and between the said patentees thereof; but the land was entered on the land books and charged with the taxes thereon in their several and respective names, as follows, to-wit: one thousand and seventy-five acres thereof being charged to each, and assessed with the taxes thereon in his individual name. By conveyances subsequent to said patent, the title of the Brown undivided third interest in said land became vested in Mary Ladd, and the Graham undivided third interest became vested in Joseph Mullins. The land was entered on the land book and charged with taxes thereon as follows: Mary Ladd, one thousand and seventy-five acres; Joseph Mullins, one thousand and seventy-five acres; and Joseph Jackson, Jr., one thousand and seventy-five acres.

The Mary Ladd one thousand seventy-five acre part was returned delinquent for the non-payment of the taxes thereon, and sold to said D. G. Sayers. The clerk of the county court of said county of McDowell, by his deed bearing date on the 17th day of September, 1881, executed and delivered to said D. G. Sayers (by the name of David G. Sayers,) a deed in which it is, among other things, recited that on the 6th day of November, 1877, at a sale of the real estate theretofore returned delinquent for the non-payment of the taxes due thereon in the said county of McDowell, said Sayers became the purchaser of a tract of land of one thousand and seventy-five acres, being one undivided one-third part of three thousand two hundred and twenty-five acres in said county, which formerly belonged to, and was returned delinquent in the name of Mary Ladd for the non-payment of the taxes due thereon for the year 1876. The description of the land as given in the said deed is the same as that contained in the patent hereinbefore recited. The deed

further recites that the tract of land as described and bounded, contains in all three thousand two hundred and twenty-six acres of which, one thousand and seventy-five acres, being the one undivided third part thereof, was sold, and thereby conveyed, be the same, more or less.  Said deed is recorded in Deed Book No. 5 at page 353, in the office of the clerk of the county court of said county.

By his deed, bearing date on the 22d day of September, 1881, similar in form to the above mentioned deed, except as to the name of the delinquent owner designated therein, the said clerk also conveyed to said Sayers another tract of one thousand and seventy-five acres, which formerly belonged to, and was returned delinquent in the name of, Joseph Mullins for the non-payment of the taxes due thereon for the year 1878; and was purchased by said Sayers at a sale thereof for said taxes on the 4th day of November, 1879.  This deed is also recorded in Deed Book No. 5 at page 355.  The entire tract of land is bounded therein, and described as containing in all three thousand two hundred and twenty-five acres, of which one thousand and seventy-five acres, being the one undivided one-third part thereof, was sold as aforesaid, and thereby conveyed to Sayers.  By deed executed by David G. Sayers and wife, Henry Harrison and wife and John Graham, Jr., to Joseph I. Doran, bearing date on the 27th day of October, 1881, the grantors therein conveyed unto Doran three several tracts of land, situated in McDowell county on the dividing ridge, Horsepen Creek, and Big Creek, one of them containing eight hundred and twenty acres, being the same tract of land, conveyed by the clerk of the county court of Mc-Dowell county to Sayers by deed dated August 31, 1881, and recorded in McDowell county in Deed Book No. 5 at page 335; one other of them, containing eight hundred and twenty acres being the same land, which the said clerk by deed dated September 1, 1881, recorded in Deed Book No. 5 at page 332, granted and conveyed unto said Sayers; and the other of them, containing one thousand and seventy-five acres, being an undivided one-third part of said tract of three thousand two hundred and twenty-five acres, and being the same tract of land which the clerk as aforesaid, by deed dated September 22, 1881, recorded in Deed Book No. 5 at page 355, granted and conveyed to Sayers.  The deed then says: "And the said David G. Sayers has

heretofore sold an undivided moiety or half part of said three-tracts of land to said Henry Harrison, and the said David G. Sayers and Henry Harrison in and by a certain instrument of writing, bearing date the 27th day of August, 1881, agreed to sell said three tracts of land to the said John Graham, Jr., and the said Henry Harrison and wife and John Graham, Jr., have united with the said David G. Sayers and wife in this present deed for the purpose of vesting a perfect title in fee simple in and to said premises in the said Joseph I. Doran. This deed is recorded in Deed Book, No. 5 at page 399 *et seq.*

On the 4th day of March, 1882, by their deed of that date, said David G. Sayers and wife conveyed to J. H. Divine, "all the following described real estate lying and being in the county of McDowell, on Sand Lick, a tributary of Tug Fork of Tug River, being one undivided one-third part of three thousand two hundred and twenty-five acres, conveyed to D. G. Sayers, on the 17th day of September, 1881, by John F. Johnson, clerk of the county court of McDowell county, by deed, which is duly recorded in the clerk's office of said county in Deed Book No. 5 at page 353. Said land adjoins a tract of six hundred and sixty-two acres of W. P. Cecil, and a tract of one hundred and fifty acres of James B. Harman, and for a more particular description of said land reference is made to said deed made by said Johnson, containing one thousand and seventy-five acres, more or less, and being an undivided third part of said three thousand two hundred and twenty-five acres as aforesaid," etc.

On the 6th day of November, 1882, John F. Johnson, clerk of the county court of McDowel county, by his deed of that date, which was admitted to record on the 28th day of December, 1883, and was recorded in Deed Book No. 7, page 7, in said clerk's office, granted to said Sayers, the tract of one thousand and seventy-five acres, being one undivided one-third part of three thousand two hundred and twenty-five acres, which formerly belonged to, and was returned delinquent in the name of, Joseph Jackson, Jr.

On the 17th day of November, 1882, said Sayers and wife, and Henry Harrison and wife, for the consideration of $1,612.-50. of which $806.25 was paid in cash; the residue to be paid in twelve months thereafter; and for which balance, to-wit, $806.25, a lien was reserved upon the land, by their deed of

that date, granted and conveyed to said Joseph I. Doran, "all that certain tract, piece or parcel of land, situate on Sand Lick, a tributary of the Tug Fork of Sandy River, adjoining a tract of Wm. P. Cecil of six hundred and sixty-two acres; adjoining a tract of James B. Harman of one hundred and fifty acres; and adjoining a survey of James B. Harman of one hundred and thirty-one acres; and bounded as follows, to-wit: Beginning at two chestnut oaks," etc., (setting out the boundaries of the three thousand two hundred and twenty-six acres as given in said patent), being the same tract of land, one undivided one-third part of which (was) taken as having been returned delinquent in the name of Mary Ladd for the non-payment of taxes due thereon for the year 1876, and sold at the door of the court house of said McDowell county, on the 6th day of November, 1877, to the said David G. Sayers, to whom John F. Johnson, Esq., clerk of the county court of said county, made a deed, bearing date September 17, 1881, since recorded in Deed Book No. 5 at page 353; and another undivided one-third of which was taken, as having been returned delinquent for the non-payment of the taxes thereon for the year 1878, as the property of Joseph Mullins, and sold at the door of the court house of said county on the 4th day of November, 1879, to the said David G. Sayers, to whom the said John F. Johnson, clerk as aforesaid, made a deed, bearing date September 22, 1881, which has since been recorded in Deed Book No. 5 at page 355. And the said David G. Sayers has since sold to the said Henry Harrison one undivided one-half of said undivided two-thirds of said tract of land, but has never made to him a deed therefor, and for that reason, the said Henry Harrison and wife now join in the present deed, with the said David G. Sayers, for the purpose of divesting their equitable title to said land. This deed is recorded in Deed Book No. 6, at page 40 *et seq.*

The said David G. Sayers and Henry Harrison in and by their said deed convenanted that they would warrant generally the lands thereby conveyed; that they had the right to convey the same to the said party of the second part; that the said party of the second part should have quiet possession of the said land; that they would execute such further assurances as might be requested; and that they had done no act to encumber the same.

By their deed, bearing date on the 24th day of November, 1891, Sayers and wife granted to appellant George H. Lambert, in fee, with covenants of special warranty, one-third undivided interest in all that certain tract of land, situate in the county of McDowell, on the waters of Sand Lick Creek, Spruce Creek and Laurel branch, but mostly on Sand Lick Creek, tributaries of Tug River, containing in quantity three thousand two hundred and twenty-six acres, and being the same tract of land, granted by letters patent of the Commonwealth of Virginia on the 1st day of December, 1854, to G. W. G. Brown, Samuel L. Graham and Joseph Jackson, Jr., the tract of land thereby conveyed, being the one-third undivided interest in said three thousand two hundred and twenty-six acre tract; and being the same undivided interest in said land, which had been conveyed to said Sayers by Francis H. Jackson, Josephine Jackson, and Jane F. Jackson, children and heirs at law of Joseph Jackson, Jr., deceased, by deed. The deed last above referred to, was executed by the said Jacksons to Sayers, bears date on the 21st day of October, 1891, and recites that, whereas there was then pending in the circuit court of McDowell county, three several chancery suits, instituted by said Jane F. Jackson, Francis H. Jackson, and Josephine Jackson, respectively, against said Sayers, the object of each of which suits was to set aside, vacate and annul a certain tax sale of the land thereinafter mentioned, at which sale said Sayers became the purchaser thereof, and to annul and set aside the deed for said land, which had been made to said Sayers by the clerk of the county court of McDowell county, in pursuance of said tax sale, (thereby meaning and referring to the tax sale and the tax deed, hereinbefore mentioned, bearing date on the 6th day of November, 1882) ; and that the matters in controversy between the parties in said suits had been compromised. The deed further states that the said Joseph Jackson, Jr., patentee, was the father of the said grantors in the deed; that they derived title to said land from their said father by descent; and that they will warrant specially the said undivided third part of said three thousand two hundred and twenty-six acres, so conveyed by them.

There is also in the record a deed made by Joseph Mullins to Joseph I. Doran, bearing date on the 15th day of July, 1884, by which said Mullins granted and released all his claims in and

upon said tract of three thousand two hundred and twenty-six
acres of land to Doran.  The deed contains this clause: "The
interest or claim intended to be hereby conveyed, and without
any recourse whatever on said Joseph Mullins, being the one
undivided third thereof, conveyed by Samuel L. Graham and
wife, to Joseph Mullins by deed of the date of the 27th day
of February, 1868. * * * And being the same land mentioned
and described, and the same interest of claim conveyed in the deed
from D. G. Sayres and wife and H. Harrison and wife to Jo-
seph I. Doran of date of November 17, 1882, and of record in
said clerk's office in Deed Book 6, pages 40-1,2 and 3."

The original bill, bill of review, amended and supplemental
bill, and bill of revivor filed in the cause by plaintiffs, state all
of the foregoing facts, and many others.  It is shown by the
record, and conceded by counsel, that the appellees, plaintiffs
below, have title to all of said entire tract, (which is in some
of the papers described as three thousand two hundred and
twenty-five and in others three thousand two hundred and twen-
ty-six acres), except such claim or title thereto as appellant,
Lambert, may have under the said deed of Sayers and wife to
him, bearing date on the 24th day of November, 1891.  The
present controversy between the parties seems to be as to the
true meaning and legal effect of the said deed of Sayers and
wife, and Harrison and wife to Doran, bearing date on the 17th
day of November, 1882.

Appellees contend that this last mentioned deed conveyed to
Doran the Jackson third, or one thousand and seventy-five acres
of said three thousand two hundred and twenty-six acre tract,
while appellant, Lambert, claims that it did not and does not
convey said Jackson third, or interest; but that the third, con-
veyed to Doran thereby, was and is either the Ladd, or the
Mullins interest.  As before stated herein, on the 4th day of
March, 1882, less than four months after the execution of said
deed to Doran, Sayers and wife conveyed to Divine, the Brown-
Ladd interest in the whole tract.  It is not likely that Sayers,
at that time, had overlooked the fact that he had executed the
deed to Doran as aforesaid.  It cannot, with much semblance
of reason, be said that the deed last mentioned was intended
by Sayers, to convey, or that it did convey, the Graham-Mul-
lins interest to Divine.  Besides, the deed of Sayers and Har-

rison and their wives, respectively, and Graham, to Doran, of October 27, 1881, refers to, and grants the one thousand and seventy-five acres, conveyed to Sayers by the clerk of the county court by deed of September 22, 1881, which is recorded in Deed Book No. 5 at page 355. Thus, it is fixed beyond question that the interest in the three thousand two hundred and twenty-six acres, conveyed by this last mentioned deed, is the Graham-Mullins third. It is also shown by this deed that before its execution, Sayers had sold to Harrison an undivided half interest in said three tracts, to-wit: eight hundred and twenty, eight hundred and twenty, and one thousand and seventy-five acres, respectively; and that Sayers and Harrison had by their writing, bearing date on the 27th day of August, 1881, agreed to sell said three tracts last mentioned, to Graham. This explains why said Harrison and Graham joined Sayers in the deed, and it also disposes of the one-half interest of Harrison in one of the two undivided thirds or interests in said tract of three thousand two hundred and twenty-six acres, bought by him from Sayers hereinafter referred to.

In the deed of Sayers and Harrison and their wives, respectively, to Doran, bearing date on the 17th day of November, 1882, one undivided third of the entire tract is granted to Doran. In order to identify the land thus conveyed, the boundaries of the three thousand two hundred and twenty-six acres are set out in the deed. Then it is stated therein that it is the same tract, from which, was taken and sold for non-payment of taxes due thereon, the Mary Ladd interest or third; that another third, to-wit: the Mullin's interest, had also been sold for delinquent taxes thereon; and that both of said interests had been conveyed by deeds to Sayers, the purchaser thereof, giving the dates of said last two mentioned conveyances. The interest thus fixed and conveyed by Sayers and wife and Harrison and wife to Doran by their last mentioned deed is the Jackson one-third interest in the entire tract. This deed, after referring to the sales and deeds and the recordation thereof to Sayers as aforesaid further recites that said David G. Sayers has since sold to said Henry Harrison, one undivided one-half of said undivided two-thirds of said tract of land, but never made to him a deed therefor, and for that reason the said Henry Harrison and wife join in the present deed with the said David G.

Sayers for the purpose of divesting their equitable title to said land. The above language indicates that after Sayers had obtained from the clerk, deeds for the Ladd and Mullin's interests in said land, and before the date of the last mentioned deed, November 17, 1882, Sayers had sold one undivided half of said two undivided thirds to Harrison. Sayers, at that time, had also procured his tax deed of November 6, 1882, for the Jackson interest. He had before that date on the 4th day of March, 1882, sold and conveyed the Ladd interest to Divine, without the joinder of Harrison in the deed therefor to Divine.

The three several interest in the land had not been partitioned, allotted or designated. At that time, November 17, 1882, but one of said undivided thirds remained unconveyed by Sayers. Harrison had already, with Sayers, conveyed to Doran his undivided half interest in the Mullin's undivided one-third of said tract of land. He was entitled to a one-half interest in one other undivided third of said entire tract. There being none other than the Jackson interest remaining unconveyed, Harrison was entitled to his one-half interest therein. For that reason, it seems, he joined with Sayers in the deed of November 17, 1882.

By adopting this view, we take the practical construction put upon the whole transaction by the parties themselves. The three tax deeds to Sayers, the two deeds from Sayers and others to Doran, and the deed from Sayers and wife to Divine, are thus made consistent with each other, and given full force and effect. No violence is thereby done to the rights of the parties thereto. Practical construction of contracts is that given to agreements by the parties themselves by acts subsequently done with reference to the contracts. To such exposition of contracts the courts pay high regard, and will effectuate it if they can do so consistently with the rules of law. Hammon on Contracts, section 399. Sayers derived title to the whole of said entire tract by and through the three several tax deeds to him. Whether such title was perfect or imperfect, it is not necessary to decide. While it is shown that Mullins brought a suit against Sayers attacking the tax deed, by which his interest in the land was conveyed to Sayers, and the Jackson heirs also instituted three several suits to set aside the tax deed, which granted their interests in the land to Sayers, yet it must be

remembered that all of those suits were compromised, and neither of the said tax deeds was canceled but each was left in full force and effect. The recital in the said deed of Joseph Mullins to Doran, bearing date on the 15th day of July, 1884, that the Mullins interest therein conveyed, was and is the same land mentioned and described, and the same interest and claim which was conveyed in the deed from D. G. Sayers and wife and Henry Harrison and wife to said Joseph I. Doran of the date of November 17, 1882, is not true in fact. The deeds taken together do not support the contention of appellant, as to that recital.

The deed last mentioned, however, is not important in the disposition of the case. As we have shown, the title of Sayers to the whole of the three thousand two hundred and twenty-six acres and to each undivided third part, thereof, was acquired by him through and by the said three tax deeds, neither of which was ever set aside or canceled. The recital in the said Mullins deed made more than three years after the deed of Sayers and others to Doran confirmatory of Doran's title already vested, being the language of Mullins, could neither contradict Doran of any title, or be set up as an estoppel in this suit against his grantees.

As between the original parties, a recital unnecessary to the conveyance will not operate as an estoppel. 2 Devlin on Deeds, section 995. A party making a deed is not estopped as between the original parties to it, by recitals unnecessary to the conveyance. *Osborn* v. *Endicott,* 6 Cal. 149. Recitals in a deed estop all parties and privies, as a general rule, but this rule does not extend to mere description or non-essential averments. 65 Am. Dec. 498. In the deed of July 15, 1884, the recital that it was the same interest and claim which was conveyed by Sayers and others by their deed of November 17, 1882, was unnecessary and non-essential to the conveyance by Mullins of his interest in the land, if he then had any interest therein.

A mistake in the recitals of a deed, referring to a previous deed of marriage settlement between the grantors, may, in equity, be shown by the grantees, by introducing in evidence the deed referred to in the recitals. *Bower* v. *McCormick,* 23 Grat. 310. A recital in a deed only operates as an estoppel in cases in which the declaration of the grantor would be evidence. A re-

cital is not competent to show title in the grantor. *Joeckel* v. *Easton,* 11 Mo. 118, (47 Am. Dec. 142.) An examination of all of the deeds in the record, relating to the said lands establishes· beyond question, that the recital in the Mullins deed was and is an incorrect statement, unfounded in fact. '

Reverting to what has been said, it will be seen that .Sayers· and Harrison, and their wives, respectively, and Graham, by their deed of October 27, 1881, conveyed to Doran, the three· said several tracts of land, to-wit: eight hundred and twenty, eight hundred and twenty and one thousand and seventy-five· acres, respectively, *lying on the dividing ridge, Horsepen Creek and Big Creek,* the latter tract being the Mullins interest in the· three thousand two hundred and twenty-six acres. The consideration stated in the deed is $3,960. $1,980 was paid in cash,. and the balance $1,980, was to be paid in twelve months from, that date. A lien upon the land was reserved by Sayers and Harrison in the deed to secure the payment of the unpaid purchase money, to-wit: said $1,980. By their deed of release· bearing date on the 23rd day of October, 1882, said Sayers and Harrison, acknowledged the receipt from Doran of $1,980,. which, with the like amount theretofore paid to them by him, was in full payment for the tract of land conveyed by them to· Doran by their deed of October 27, 1881, recorded in Deed Book No. 5 at page 399; and they thereby released and discharged the· said Joseph I. Doran of and from all claim and demand under· said deed, and especially released and discharged the said land thereby granted of and from the vendor's lien for the balance of purchase money expressly reserved by them in said above· recited deed.

On the same day, to-wit: on the 23rd day of October; 1882,. said David G. Sayers and Henry Harrison, by their certain writing signed and sealed by them, and bearing the date last aforesaid, bargained, sold and conveyed to Joseph I. Doran, and his heirs in fee simple, with warranty of title, covenants· of quiet possession and freedom from incumbrance, a certain tract or parcel of land situate in the county of McDowell, containing 1,075 acres, more or less, adjoining the lands of Joseph I. Doran, and J. H. Divine, and bounded as follows: "Beginning· at part of a tract *sold by us to Jos. I. Doran on Sand Lick."* It is provided in the writing "that the party of the second part

(Doran) shall be allowed one month from the date hereof to dig upon, and explore said land for minerals, and, in addition thereto, to complete this bargain by paying for the land, one dollar and fifty cents per acre, one half cash, balance in six months," &c. This is followed up by said deed of Sayers and Harrison and their wives, respectively, to Doran, dated November 17, 1882, after Sayers had obtained his tax deed for the Jackson interest in said land.

The said Deed of Mullins to Doran of July 15, 1884, was executed for the consideration of two hundred and fifty dollars, the receipt of which is acknowledged by Mullins in the deed. There is also in the record a receipt of Mullins to Doran, bearing date on the 15th day of July, 1884, which is endorsed on the deed, for said two hundred and fifty dollars; and also a receipt of Harrison and Sayers to Doran, bearing date on the 16th day of July, 1884, in the words and figures following: "Received of Joseph I. Doran, two hundred and fifty dollars to be a credit on the purchase money for certain lands sold by the undersigned to said Doran, lying in McDowell county, West Virginia. And a lien reserved in the conveyance of said land for part of the purchase money; and this payment we are to credit on the margin of the deed book in which said conveyance is recorded.

(Signed)    Harrison and Sayers.    By H. Harrison."

By their certain deed of release, bearing date on the 29th day of April, 1886, Harrison and Sayers and their respective wives thereby demised, released, quit claimed and forever discharged the said tracts, or parcels of land, and particularly, all those certain three tracts or parcels of land conveyed by Henry Harrison *et ux et al,* by deeds, dated October 27, 1881, November 17, 1882, and November 17, 1882, respectively, recorded in McDowell county, West Virginia, in Deed Book No. 5 at page 399, No. 6 at page 43, and No. 6 at page 40, respectively, situate in said county, one thereof beginning * * * the other thereof situate on the waters of Sand Lick Creek, and on the waters of Spice Creek, on Laurel Branch, and other small branches, but mostly on Sand Lick Creek, all waters of Tug River, adjoining a tract of William P. Cecil of six hundred and sixty-two acres; a tract of James B. Harman of one hundred and thirty acres, and bounded as follows: Beginning at two

chestnut oaks by a cliff of rocks on the east side of Sand Lick
Ridge, about twenty yards from the top of said ridge on Spice
Creek waters, a corner of W. P. Cecil's six hundred and sixty-
two acre tract * * * containig three thousand two hundred
and twenty-six acres * * *.  So that the said Joseph I. Doran
and the South West Virginia Improvement Company, their
heirs, successors and assigns, shall and may hereafter have,.
hold, occupy and enjoy all and singular the premises now owned
by them, respectively, in said above mentioned deeds, particu--
larly described, and every part thereof, with their appurte-
nances, without any molestation, interruption, eviction of the said
Henry Harrison and David G. Sayers, or either of them, or·
their or either of their heirs, executors, administrators or as-
signs, or of any other person or persons, natural or corporate
whomsoever, claiming, or to claim by, from or under, them or·
either of them, or by or with their or either of their acts, means,
consent, or procurement.   The above recited papers show that
Harrison was a joint owner with Sayers of the Mullins undi-
vided third of said tract of three thousand two hundred and
twenty-six acres of land, and of the proceeds of the sale thereof
to Doran; that he was also considered and treated as a joint
owner with Sayers of the remaining or Jackson undivided third
therein and of the proceeds of the sale thereof; but was not
considered or treated as a part owner of the Brown-Ladd third.

Therefore, the facts conclusively established are, that Sayers
acquired title by his tax deeds and otherwise to all of the tract
of three thousand two hundred and twenty-six acres of land;
that he sold, but did not convey, to Harrison an undivided
half interest in two of the undivided thirds of said entire tract;
that Sayers conveyed one of the undivided thirds, to-wit: the
Ladd interest to Divine, but Harrison did not join in that deed;
that Sayers, Harrison and their wives, respectively and Graham
sold and conveyed to Doran the Mullins interest in said land,
'for which Sayers and Harrison received the purchase money
and executed and delivered to Doran a release of the said ven-
dor's lien on the 23rd day of October, 1882; that, there being
but one undivided third of the land then unsold and uncon-
veyed, to-wit: the Jackson third, Harrison was entitled, as be--
tween Sayers and himself, to one undivided half thereof; that
Sayers and Harrison then executed the writing to Doran of·

October 23, 1882, which is an option to Doran to buy the said, remaining one undivided third of said land; that said third was and is the Jackson interest; and none other; and that said Jackson interest was and is conveyed to Doran by the deed of Sayers and Harrison and their wives, respectively, of November 17, 1882. The last mentioned deed conveyed to Doran all the right, title and interest which the grantees therein were then entitled to, in the said Jackson interest, or third of the three thousand two hundred and twenty-six acres of land. On the 21st day of October, 1891, the deed by the Jackson heirs was executed to Sayers. Thirty-four days thereafter, Sayers, by his deed of the 24th day of November, 1891, attempted to convey said Jackson interest to appellee, Lambert.

This leads us to a consideration of the legal effect of the covenants in the deed of Sayers and Harrison to Doran, of the 17th day of November, 1882.

In *Burtners* v. *Keran,* 24 Grat. 42, it is held that if a person conveys land with general warranty, and does not own it at the time, but afterwards acquires the same land, such acquisition enures to the benefit of the grantee, because the grantor is estopped to deny against the terms of his own warranty, that he had the title in question; but it does not operate actually to transfer the estate subsequently acquired. The court cites 4 Kent. Com. 98: "If the conveyance be with general warranty, not only the subsequent title acquired by the grantor will enure by estoppel to the benefit of the grantee, but a subsequent purchase from the grantor, under his after acquired title is equally estopped, and the estoppel runs with the land." *Raines* v. *Walker,* 77 Va. 92. Mr. Justice Story, in *Carver,* v. *Jackson,* 4 Pet. 86, says: In the next place it shows that such estoppel binds all persons claiming the same land, not only under the same deed, but under any subsequent conveyance from the same party; that is to say, it binds not merely privies in blood but privies in estate, as subsequent grantees and alienees. In the next place, it shows that an estoppel which (as the phrase is) works on the interest of the land, runs with it into whosoever's hands the land comes. In *Myers* v. *Croft,* 13 Wall. (U. S.) 291, it is held, that a grantor not having perfect title, who conveys for full value is estopped, both himself and others claiming by subsequent grant from him, against denying title; a perfect title

afterwards coming to him. *Irvine* v. *Irvine,* 9 Wall. (U. S.) 618, 19 Am. & Eng. Enc. Law, 1022, citing a long array of authórities in support thereof, says: In most states the covenant of general warranty is held not only to estop the grantor and his heirs from setting up an after acquired title, but also actually to transfer the estate subsequently acquired, as if it had passed by the deed in the first instance. Applying the foregoing principles, the conveyance by the Jackson heirs to Sayers, enured to the benefit of Doran, as against Lambert, unless Lambert's contention in the case be well founded.

Appellant, in his answer to plaintiff's bill, in part says: That he is an innocent purchaser, for valuable consideration, without notice, actual or constructive, of any real or pretended claim of plaintiffs, the land in controversy being unoccupied, wild and uncultivated, and he having had no actual notice in any way, and no constructive notice. He admits "that his co-defendant, D. G. Sayers, who is his grantor, represented to him that he, (Sayers), having compromised with the heirs at law of Joseph Jackson, Jr., had a perfect and indefeasible title to said land, and that respondent having seen the conveyance to Sayers from the Jackson heirs, dated October 21, 1891, * * * purchased the land." Appellant contends that there is nothing in the deeds hereinbefore, and hereafter referred to, sufficient to put him on notice that the Jackson interest had been purchased by Sayers, or conveyed by him and others to Doran. The tax deeds to Sayers for the Mullins and Ladd interests, and the deeds from Sayers and others to Doran, and from Sayers and wife to Divine for those interests, respectively, were each on the record in the proper office, when Lambert took his deed from Sayers. Lambert admits that said deeds were on the record. In the deed from the Jackson heirs to Sayers, the tax sale and tax deed to Sayers for that interest are referred to. The tax deed last mentioned was also recorded at that time, as well as the said option, and the subsequent deed of Sayers and Harrison to Doran.

It is further shown by the evidence that Lambert was in the employ of the plaintiffs, or the company for which they are trustees, as their agent; that his employment began in the latter part of 1888, or early part of 1889; that he received a monthly salary for looking generally after their interests, namely, plac-

ing tenants on their lands and preventing trespasses thereon; that before the date of the deed from Sayers to him, he knew of the plaintiff's claim to the said land; that he was told of the claim of plaintiffs about the 20th day of October, 1891, and that he had access to the maps of the lands of plaintiff, on which the land in controversy was shown. On March 1, 1890, Lambert, while acting as the agent of plaintiffs, caused a written lease to be prepared between plaintiffs and one Rose, whereby the Harrison and Sayers and the Divine tracts of land were leased to Rose. It is proved that the Harrison and Sayers tract mentioned in said lease is the land in controversy. The lease recites that the plaintiffs are the owners of said two tracts of land. All of this occurred before Lambert had paid any money to, or completed his said purchase of the land from Sayers. Possession by Rose, the tenant of plaintiffs, placed on the land by Lambert, was sufficient notice to him, to put him upon inquiry as to plaintiffs' claim. *Campbell* v. *Fetterman,* 20 W. Va. 398. There are many other things disclosed by the record, relating to the said land, sufficient to have put a man of ordinary caution and prudence upon inquiry as to the true ownership of the Jackson interest therein.

In *Fidelity Co.* v. *Railroad Co.,* 32 W. Va. 244, it is held that where a subsequent purchaser has actual notice that the property in question was incumbered or affected, he is charged constructively with notice of all the facts and instruments to the knowledge of which, he would have been led by an inquiry into the incumbrance or other circumstance affecting the property of which he had notice. Notice is actual when the purchaser knows of the existence of the adverse claim, or perhaps, when he is conscious of having the means of knowledge, and yet does not use them; and it is immaterial whether his knowledge results from direct information or is gathered from facts and circumstances. Minor Ins. Vol. 2, 978. Whatever puts a man upon inquiry amounts, in judgment of law, to notice, provided the inquiry becomes a duty, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding. 16 Am. & Eng. Enc. Law, 792, and cases cited. To entitle an innocent purchaser without notice to protection in equity, the text books do not assert, nor has any case been found to adjudge that he must

hold under a general warranty deed; but it is no doubt the law where a person bargains for and takes a mere quit claim, or deed without warranty, it is a circumstance, if unexplained, to show that he had notice of imperfections in the vendor's title, and only purchased such interest as the vendor might have in the property. 16 Am. & Eng. Enc. Law, 834. The deed of the Jackson heirs to Sayers contains a special warranty only; and the said deed from Sayers and wife to Lambert contains a similar covenant. One who claims the protection of a court of equity as a *bona fide* purchaser, must show that he has acquired the legal title before notice or knowledge of facts equivalent to notice. 16 Am. & Eng. Enc. Law, 839.

Under the facts and circumstances of this case, as disclosed by the record, we must hold that Lambert was not an innocent purchaser for a valuable consideration of the Jackson interest in said land, without notice of plaintiffs' claim of title thereto, and ownership thereof.

For the reasons stated, we affirm the decree.

*Affirmed.*